## THE STATE v. MALONEY, *Appellant.*

### DIVISION TWO.

1. **Criminal Law :** ABDUCTION TO COMPEL MARRIAGE: EVIDENCE. The defendant was indicted for having taken the prosecutrix with force and against her will, with intent by force, menace and duress to compel her to marry him. Some time after the alleged commission of the offense he wrote her two letters, in each of which he threatened to kill her if she did not marry him on a certain day. *Held* that the evidence was incompetent and prejudicial.

2. ———— : ———— : INSTRUCTION. It was error to instruct the jury that, if the defendant detained the prosecutrix in a buggy and drove her into the country against her will, such facts would constitute an assault within the meaning of that term as used in an indictment under section 3483, Revised Statutes, 1889, defining the offense of a person taking away a woman against her will with the intent to compel her by force to marry him.

*Appeal from Bates Circuit Court.* — HON. D. A. DEARMOND, Judge.

REVERSED AND REMANDED.

*T. W. Silvers* for appellant.

(1) The state is bound to prove, *first*, that defendant took the prosecuting witness unlawfully against her will, and, *second*, that his intent was to compel her at the time of the taking to marry him. R. S. 1879, sec. 1256. (2) The letters of May 17, and June 6, 1888, were improperly admitted in evidence. They were irrelevant and prejudicial. Only such evidence is admissible which tends to prove the issue. Greenl. Ev. [14 Ed.] sec. 52–3. (3) Instruction, numbered 2, given for the state was erroneous. (4) The verdict is against the evidence.

*John M. Wood*, Attorney General, for the State.

(1)  The indictment was drawn under section 1256, Revised Statutes, 1879 ( R. S. 1889, sec. 3483 ), and properly charges an offense under that section.  The allegation of an assault having been made, and that defendant put Amy DeArman in great danger of her life, is simply descriptive of the character of the force applied and of the menaces.  But, if this is not necessary, it simply amounts to surplusage, and under section 4115, Revised Statutes, 1889, does not invalidate the indictment.  (2)  The court did not err in admitting the letters offered in evidence, or in admitting testimony as to what defendant testified to in the preliminary examination.  This was the only evidence objected to, and it requires no citation of authorities to show that the court ruled properly.  (3)  The instructions were all correct, and fairly submitted the case to the jury.  No error was committed prejudicial to the defendant, and the evidence clearly establishes the charge, and the judgment should be affirmed.

GANTT, P. J.—This is a prosecution under section 1256, Revised Statutes, 1879, or section 3483 of Revised Statutes, 1889.

The defendant was charged with having taken the prosecutrix with force and against her will with intent to compel her by force, menace and duress to marry him.  The taking was laid on April 25, 1888.  The plea was not guilty.  There was a mistrial at the November term, 1888, and at the February term, 1889, of the Bates circuit court defendant was again tried, and was convicted, and his sentence assessed at two years in the penitentiary.  From this he appeals to this court.

The prosecutrix, Amy DeArman, was attending school in Butler, boarding with Mrs. Newbill.  Her father lived in Adrian in said county.  She was nineteen years old.  She testified she had been engaged to

the defendant since she was fifteen years old, but the engagement had been broken in the fall of 1887. A few days prior to the affair which is the foundation of this prosecution, the defendant wrote her a letter and requested her to take a ride with him in the city of Butler.

He appears to have been very greatly enamored. She wrote him and agreed to ride with him on the afternoon of April 25. Pursuant to his engagement he called and they started about five o'clock. They drove through Butler, and went east on the Appleton City road. As she was then studying botany, she requested the defendant from time to time to gather her specimens of the wild flowers that abound upon the rich prairies of that section. After gathering their flowers, they drove north some four or five miles and came back into the city from that direction. On this ride defendant renewed his suit.

When he reached town instead of taking her home, he drove on through to the depot in the western part of the city. At this point, she says, she tried to get out of the buggy, and he would not permit her. She claims to have been afraid to scream as she went through the town. They went on to the Miami, a small river some four miles from Butler. There he seems to have begged and importuned her to marry him; and she says he told her he was going to take her to the Indian Territory and compel her to marry him.

In short, they remained out all night in the buggy. Next morning, she agreed, if he would take her back to Butler, she would marry him in fifteen minutes after they reached town. This seems to have satisfied him, and he started to Butler. On the way back, she says, having convinced him she would marry him, she then prevailed on him to consent to wait till the next week after her school closed, some two months from that time. When seen at Virginia, a village in the western part of the county, she appeared to be happy and in good

humor.   He brought her back to Butler.   In May she was sick, and went home to Adrian.   He wrote her asking permission to call.   Her mother answered the letter, saying Amy was too sick to write.   In this letter her mother assured him Amy said she would fulfill her promise, and informed him he could call as soon as Amy was well enough to receive him.

The defendant seems to have been of a violently jealous nature, and on the seventeenth of May he wrote the prosecutrix a letter full of extreme protestations of love for her, and in it fixed the twenty-first of June as the day for their marriage, and said, "On that day I will see you be made my wife, or see you die."   Again on the sixth of June he wrote her another passionate effusion, in which he again threatens to marry her on the twenty-first of June or "end both of their lives."   After these letters this prosecution was commenced.

The evidence shows that her father knew of their engagement.   He sent for defendant's father, told him of the engagement, and asked if they were not too poor to marry ; suggested that George, the defendant, should go west and make a raise ; that the girl was too young to marry.   As tending to show the good feeling between the parties, several of their letters were read, showing he was received as a suitor in the family ; and as to her fear of him, that she stated on the preliminary trial, that she laid her head on his arm or shoulder and slept that night as they sat in the buggy.

The defendant on his part testified that they had been engaged, but had a misunderstanding ; that on the ride they talked over old times, both cried about it. She still wore his engagement ring.   She took this off, and asked him to replace it, and he did so.   He denies trying to compel her to marry him.   Denies that he told her he would take her to the Indian Territory.   It is evident that he had made no preparation for such a journey, and, if he intended to take her there, it is

indeed strange that he should have driven in an opposite direction, and made no more progress than he did. No suggestion of any rudeness or indelicacy on his part is made. Indeed, it does appear that he was greatly infatuated with her. His whole purpose seems to have been to restore himself in her affection, and renew his engagement for some future time. There is, it seems, an absence of anything looking to any immediate consummation of a marriage on this trip. At most it was a foolish, indiscreet action of a jealous man, thoroughly enamored of the young lady—a passion, too, which had evidently been encouraged by her.

The court instructed the jury as follows : "1. The jury are instructed that if you find from the evidence that the defendant, George Maloney, in Bates county, Missouri, in the spring of 1888, upon one Amy DeArman, an unmarried woman, did feloniously make an assault, and unlawfully and feloniously, against her will, with intent to compel her by force to marry him, did take the said Amy DeArman, as charged in the indictment, you should convict the defendant, and assess his punishment at imprisonment in the penitentiary for not more than five, nor less than two years. Unless you so find from the evidence you should acquit. And, if upon a fair and full consideration of the evidence, you have a reasonable doubt of the guilt of the defendant as charged, you should give him the benefit of such reasonable doubt and acquit, but a reasonable doubt, to warrant an acquittal on that ground, must be a substantial doubt of guilt upon the evidence, and not a mere possibility or conjecture of innocence.

"2. The court instructs the jury that if the defendant detained Amy DeArman in the buggy and drove her into the country against her will that will constitute an assault within the meaning of the term assault as used in the indictment."

To the giving of which instructions the defendant then and there excepted at the time.

On behalf of the defendant the court gave instructions as follows: ''1. The court instructs the jury that if you believe from the evidence that the defendant on the twenty-fifth day of April, 1888, took the prosecuting witness, Amy DeArman, a buggy ride as shown by the evidence, but did not continue the buggy ride and take her away from Butler, and keep her out with the intent to compel her to marry him, but for the mere purpose of inducing her to engage herself to marry him at some future time, you should find the defendant not guilty.

''2.  The court instructs the jury that you are the sole judges of the credibility of the witnesses, and if the jury believe that any witness testifying in the cause wilfully swore falsely to any material fact in said cause you are at liberty to wholly disregard the testimony of such witness.''

These were all the instructions given to the jury.

The errors complained of are, *first*, the admission of the two letters of May 17, 1888, and June 6, 1888, in evidence; and the giving of the instructions for the state, and it is also urged on us, that the verdict is against the evidence.

The two letters of the defendant of date May 17, and June 6, were improperly admitted in evidence. They nowhere confess or admit any material fact in the indictment on which he was being tried.  There is nothing in either of them that admits or tends to admit that he took her on that ride by force, and against her will.  No assault, or force or threat, duress or menace, is admitted to have been made or used by him to the prosecutrix on April 25.  When thoroughly sifted they simply contain, each, a threat, that if she refuses to marry him on June 21, as she had promised, that he would kill her and himself.

'' No fact, which, on principles of sound logic, does not sustain or impeach a pertinent hypothesis, is relevant.''  It is certainly important to observe this rule on trials for felonies.  A jury might very well imagine

it was their duty to put the defendant in the penitentiary to prevent the execution of his threats, and lose sight entirely of his purpose in taking the ride with the prosecutrix.    This evidence was incompetent and highly prejudicial.    For this error, this cause must be reversed. Wharton's Crim. Ev., sec. 29, and cases cited.

We think the court correctly told the jury that if the defendant merely intended by detaining the prosecutrix in the buggy to extort a promise to marry him in the future ; and that he had no present intention of forcing her to marry him, then he was not guilty, and we think the instruction for the state instead of referring to the indictment for information, should have told the jury clearly that, to convict him under this charge, it must have been his intention and purpose, by threat, duress or menace then and there, to consummate the marriage without her consent.

In a case where there appears so little of the crime in the act itself; where two young people for years have been by permission of their parents engaged, and recognized as equals, it is somewhat difficult to understand fully the motive for this prosecution, commenced long after the young lady was safe in her home ; long after the mother in her letter by implication, at least, approves the engagement ; and her father makes no objection, except the want of means on defendant's part.    As above indicated, we see no need of the averment in the indictment of the felonious assault ; the indictment was well enough without it, but, if necessary, we think the second instruction is clearly insufficient as a definition of the elements of a felonious assault.    The idea of crime must exclude all hypothesis of innocence, and it requires no stretch of imagination to conceive of many innocent, even praiseworthy, motives that might have actuated this young man to have detained the young woman in the buggy, and yet not been guilty of a felonious assault upon her.    It is not every indiscreet act or mistake of judgment that can fairly be construed

into a felony. "Detain" is susceptible of many shades of meaning. The idea of force or even duress, threat or menace, can all be easily excluded, and the word still be pregnant of meaning. We are often *detained* by the persuasive conversation of our friends and by our sense of propriety, and no suggestion of force enters into the mind.

For these errors the judgment will be reversed and cause remanded. All the judges of this division concur.