————o————

JOHN McGOWAN, Plaintiff in Error, *vs.* THE ST. LOUIS AND IRON MOUNTAIN RAILROAD COMPANY, Defendant in Error.

1. *Railroad—Damages, action for against conductor when fellow-servant—Company bound by acts of, when.*—In action of damages against a railroad corporation by one injured by the giving way of a hoisting apparatus, used in connection with a train of the company, it appeared that plaintiff had reason to believe at the time that the apparatus was unsafe, but relied on the assurance of the conductor that it was "all right," and so was injured. But there was no proof that the conductor had the superintendence or control over the men or the work, or power to provide or replace machinery. *Held,* that the conductor was, *quoad* the casualty, a fellow-servant merely, and not a vice principal, and his re-assurance to plaintiff, and representation that there was no danger, would not bind the company and render it responsible. But, contrawise, when the facts showed that he represented the company in the premises, such assurance would amount to a guaranty on its part, and would bind it for any resulting damage. And so notice to him of danger would affect the corporation if he acted in that capacity, and not otherwise.

2. *Railroad—Prima facie all employees are fellow-servants.—Prima facie* all employees on a train of cars, including conductors, are fellow-servants; whether so or not, is a question not only of law, but depending on the facts; and the burden is on him who seeks to show that the relation does not exist.

*Error to St. Louis Circuit Court.*

*Cline, Jamison & Day,* for Plaintiff in Error.

The conductor was the agent chosen by defendant to manage and control the work, and plaintiff was acting in a subordinate capacity. He, therefore, had a right to rely on his

representation. If he did, he is entitled to recover; and, whether he did or not, was a question for the jury.

*Thoroughman & Warren*, for Defendant in Error.

Plaintiff knew of the condition of the rope, and took the risk. (Devitt vs. Pac. R. R., 50 Mo., 305.)

Nothing shows negligence on the part of the company in the employment of servants.

See generally, Gibson vs. Pacific R. R., 46 Mo., 169.

HOUGH, Judge, delivered the opinion of the court.

This was an action to recover damages for personal injuries received by the plaintiff while engaged as a laborer in loading bridge timbers on defendant's cars, on the line of its road. The petition alleged that plaintiff was injured by the carelessness and wrongful acts of the defendant, its agents and employees, and by reason of the defects and rotten condition of a certain rope furnished by the defendant, to draw the timbers from the ground upon the cars, which gave way while in use, whereby the timber being raised by it, fell upon plaintiff's left foot and ankle, crushing it; and that defendant knew that said rope was defective and insufficient, and plaintiff was ignorant thereof.

The defendant admitted the injury, denied the other allegations of the petition, and averred that the plaintiff was fully cognizant of the character and condition of said rope, prior to and at the time of said injury, which averment was denied by the plaintiff.

It appeared at the trial that the train had an engineer, conductor, and twelve laborers. They had been employed for several days in loading timbers on the cars at different points on the line of the road, and were so engaged at the time plaintiff was injured.

The timbers, in being loaded upon the cars, were forced from the ground by the side of the track, over skids extending from the top of the cars to the ground, chiefly by means of a large rope fastened about the timber at its middle and

passing through a snatch block, anchored from the opposite side of the cars, and running thence forward to the engine, to which it was attached, and which furnished the power to raise the timber. The plaintiff and other laborers assisted with handspikes at each end of the log, to force it up the skids, and also to keep it in a horizontal position. Half of the men worked at one end of the timber, and half at the other. The timber which injured the plaintiff was a hewed bridge timber, longer than a single car, and was being loaded upon two flat cars. One end had reached and was fastened upon the top of one car, and while the plaintiff was assisting with his handspike in the elevation of the other end, an extra amount of steam was put on in order to spring it up on the other car, and the rope, not being able to bear the strain, then put on by the engine, parted, and the timber fell back upon the plaintiff, causing the injury complained of. The rope used on this occasion was described by the plaintiff, the only witness who testified at the trial, as a "pretty large rope" and a "middling old rope" which was used only for hauling timber. He further stated that it was rotten at one end, and afterwards said that end had been cut off. It seems that the laborers had been apprehensive of danger from the insufficiency of the rope for two days prior to the accident, and had expressed their fears to the conductor, who said it was all right. Just before the injury, and while the timber was being raised, the men again spoke of the insufficiency of the rope, and the conductor answered that the rope was all right, to go ahead. The plaintiff said, he believed the conductor, took his position at the end of the timber, and was injured in consequence. The foregoing is the material portion of the plaintiff's testimony.

The defendant asked an instruction in the nature of a demurrer to the evidence which was given, and the plaintiff took a non-suit with leave to move to set the same aside, and the court afterwards having refused to set the same aside, and entered judgment for the defendant, which was affirmed at

General Term, plaintiff has brought the case here by writ of error.

It is conceded by plaintiff's counsel, that if the plaintiff knew that the rope was defective and dangerous, and with this knowledge, voluntarily took his position at the end of the timber while it was being raised from the ground to the cars by means of the rope, he cannot recover.

But it is contended by counsel that while the plaintiff may have had reason to believe that the rope was defective and insecure, yet as he believed the conductor when he told him it was all right, and in consequence thereof took his place at the end of the timber and was injured, he has a right of action.

No assurance of safety from a fellow-servant, or a stranger inducing such belief on the part of the plaintiff, would make the master liable; and the correctness of the position of plaintiff's counsel must therefore depend solely upon the relation which the conductor bore to the defendant and to the plaintiff, respectively. This is the only inquiry which this record requires us to make. There is no testimony tending to show that the defendant knew of any defect in the rope, unless the complaints made to and in the presence of the conductor, constituted notice to the master. It does not appear whose duty it was to furnish the rope or who did in fact furnish it, or whether there was any negligence in providing it, or any knowledge or means of knowledge, on the part of the master of its defects, otherwise than as above stated.

The record does not disclose whether the conductor simply had the management of the train and the direction of the movements of the engine when loading the timber, or whether he was also entrusted with power and authority to provide the appliances used, and to employ and discharge the hands, and had the control and superintendence of the laborers and their work.

The plaintiff, in one portion of his testimony, speaks of his foreman having furnished him an account of his time, to enable him to draw his pay when he recovered from his injury,

but what the foreman's duties were, and what connection he had with the work at which plaintiff was injured, do not appear. It is not even shown that he was present at that time. Who are fellow servants is not a question of fact exclusively, nor is it solely a question of law. It depends for solution upon both law and fact. When the necessary facts for determining the question are undisputed, of course it is then simply a question of law. *Prima facie* all servants of a common master employed in running, operating, and rendering service with a train of cars, are fellow-servants. If there are facts which show that this relation does not really exist between all of such servants, the burden of showing such facts is on him who seeks to avail himself of the absence or non-existence of such relation. This court cannot take judicial notice of the duties required of, or performed by such servants, nor of the degrees of supremacy or subordination existing among them. If the conductor who quieted the plaintiff's apprehensions of danger, and re-assured him of his safety and the sufficiency of the rope, was a vice-principal, acting for, and in lieu of, the master in the control of the hands, and the superintendence of the work and machinery, we think the defendant would have been liable, notwithstanding the plaintiff may have believed the rope to be unsafe. An assurance from one representing the master, that the machinery or apparatus being used is all right, and an order from him to his servant to use it, notwithstanding a complaint of the servant as to its sufficiency, amounts to a guaranty of safety, and the master will be liable for any injury then resulting from its prudent use.

If the conductor did not occupy the position of master to the plaintiff at the time of his injury, then what he said and did, with reference to the rope, could no more bind the master, than the words or conduct of any one of the eleven laborers who were working at the log in conjunction with the plaintiff. There is not a syllable of testimony showing what the power and duties of the conductor were. The mere fact that the men represented to him, that the rope was unsafe, does

not tend to show that he had power to employ and discharge hands, or to provide and replace machinery and materials, or was charged with the superintendence and control of the men and their work, in short, that he was a vice-principal, representing the defendant. Notice to a person as agent will not bind any one as principal, unless such person really be agent of the one sought to be bound; and the agency of such person must be proved by evidence directed to that point, and cannot be proved by the mere fact of giving the notice. Whether the complaint was made to him because he represented the master, or because it was his duty to supervise the movement of the engine and regulate the tension of the rope, would be a matter of sheer conjecture on the testimony in this cause. For anything which appears in this record, notice to the driver of the engine to which the rope was attached, that it was insecure, would have been equally binding upon the defendant. The testimony fails to show that the conductor or engineer were other than fellow-servants of the plaintiff, each performing distinct duties in the common employment.

In the case of Murphy vs. Smith, 19 C. B., (N. S.) 361, the testimony adduced at the trial to show that the person by whose negligence an injury was occasioned, was a vice-principal of the defendant, was to the effect that, whenever one Simlack, who was foreman in charge of the factory, was away, Delor, the person who caused the injury, took his place, and that at the time of the injury Simlack was away.

Erle, Chief Justice, said, "Is that any evidence that Delor was a person appointed to represent the defendant? The only other evidence was, that at the time the explosion took place, Simlack was not at the factory, and that Delor was. Is that any evidence that Delor had the authority I speak of?" And the four judges sitting in banc, made absolute a rule *nisi*, to enter a non-suit, on the ground that there was no evidence on the point, on which the jury could reasonably act, though Keating, Judge, had taken the opinion of the jury, as to whether Delor was at the time filling the position of

manager or representative of the defendant, and they answered that he was. We think the testimony in that case much stronger and more pointed than in the case at bar. In this case, the conductor not having been shown to have possessed such power and authority as to make the master responsible for the assurances given by him as to the sufficiency of the rope, the instruction that the plaintiff could not recover on the case made, was rightly given, and the judgment will be affirmed. All the other judges concur, except Judge Vories, who is absent.