ALDRIDGE'S ADM'R v. THE MIDLAND BLAST FURNACE COMPANY, *Appellant.*

1.  **Declarations of an Agent** made one hour after the occurrence to which they related ; *Held,* no part of the *res gestae,* and not admissible in evidence against his principal.

2.  **Master and Servant:** INJURIES FROM PATENT DANGERS.  If a servant knows of the danger in prosecuting his master's work, or if it is so patent that an ordinarily observant man would have seen it, and without any assurance from the master he continues at work, he cannot hold the master liable if injury result to him therefrom. Compare *Flynn v. K. C., St. Jo. & C. B. R. R. Co., ante,* p. 195.

*Appeal from Phelps Circuit Court.*—HON. H. V. B. HILL, Judge.

REVERSED.

*A. & J. F. Lee, Jr.,* for appellant.

*Smith & Krauthoff* and *L. Judson* for respondent.

HENRY, J.—This is an action brought in the circuit court of Dent county by E. N. Aldridge against the Midland Blast Furnace Company, for personal injuries received by him June 23rd, 1877, while working in an iron-ore bank of defendant, in Dent county. The cause was removed by change of venue to Phelps county, and the trial begun on plaintiff's amended petition. The amended petition stated that while plaintiff was at work by defendant's direction in the Millsap bank at the foot of an embankment or wall of earth, four feet back from the face of which was a crevice partially separating the embankment from the body of the surrounding earth, the embankment fell upon and injured him by reason of defendant's failure to secure it by the use of shores or props; that plaintiff was ignorant of the crevice and defendant was not. The answer was a general denial, and a special defense of compromise and satisfaction of plaintiff's demand by the payment of $150 to him by defendant, which he accepted in full satisfaction of all demands on account of the injuries received by him. On a trial plaintiff had judgment for $500, from which defendant has appealed.

It was admitted that defendant was the owner of the Millsap bank, and that F. C. Griffin was the agent and vice-principal of defendant; that the business of mining is dangerous and hazardous. The evidence for plaintiff tended to prove that he was employed to work at said bank about three days before the accident, but had not worked upon the embankment before that day, and only an hour before it caved in on him; that he was employed as a miner by Griffin, and directed by him to assist in shoveling dirt near the foot of the embankment, undermining it, in order to cause it to fall into the excavation, and plaintiff knew the object in undermining it. At the time Griffin ordered plaintiff to work, there was a blind seam of clay four feet

back from said face, in which there was a crevice or crack four inches wide and running parallel with said face for its whole length to a point separating said bank from the adjacent earth, which increased the danger of operating said mine; it was known to Griffin and unknown to plaintiff. Griffin was not in the cut nor on the bank from the time he ordered plaintiff to begin work until after plaintiff was injured.

Hicks, a fellow-servant of plaintiff, testified that he was on the top of said bank that evening before the accident, at three o'clock, and saw a crack four feet from the face, as the face was when he saw it, and he went down and told the crowd at work at the foot of it; he spoke particularly to Henry Graff, another fellow-servant of plantiff, and Graff heard him, but plaintiff did not; he told them it was dangerous to work there. He testified that the bank was dangerous without the crevice, and any one could see that it was dangerous; that he was picking at the foot of the bank which fell, on the evening before the accident, and also for a short while on the morning of the accident; but being aware of the danger that the bank would fall, he gave his pick to Graff; then Graff continued to undermine the bank with his pick, the plaintiff shoveling the dirt after Graff, and about two feet from him.

William J. Hill, another witness for plaintiff, a miner of twenty years' experience, testified that he was at work at the bank when the accident occurred, about 100 yards from plaintiff; that he was at work about twenty minutes before the accident; that it was unsafe to work under a bank of the height and materials that bank was composed of; and it was so considered among miners; any experienced miner could see, by looking at the bank, that it was dangerous; some miners take risks which others will not take.

The plaintiff offered evidence tending to prove that he was able-bodied before he was hurt; that Graff continued to undermine the bank, and upon digging out a piece of stone or ore, the bank slid down upon plaintiff and upon

36—78

Graff; that Griffin was in the cut immediately after the accident, and helped to uncover plaintiff, and sent to town for a buggy and a doctor. The town was from one-quarter to half a mile from the Millsap bank. The doctor came and found the plaintiff lying on the ground. Plaintiff was then put in a buggy and carried to his house; that when plaintiff was being carried to his house he was borne opposite the store of one Samuel Morrison, who being sworn on the part of plaintiff, testified that he was a stove and tin merchant, and lived in the town of Salem; that after Aldridge was carried past his store, where Morrison then was, Morrison went immediately up to the Millsap bank, and arrived there about one hour after the accident; that he found Griffin at the bank, but not in the cut, about thirty feet from where the accident took place; Griffin did not appear excited, but seemed to be troubled.

Plaintiff's counsel then asked the witness, Morrison, the following question:

Ques. State if you had any conversation with Griffin at that time, about the accident and its cause, and if so, what that conversation was. Defendant objected to the question because the same was irrelevant and incompetent, and could not bind the defendant; that the agency of Griffin had ceased, and his statements made after the accident were not admissible because the same were hearsay. The objection was overruled, and defendant excepted to the ruling. Morrison, answering, said that he did have a conversation at that time, and in that conversation Griffin said he had just come from town before the accident, and had seen the bank hanging there, and knew it ought to come down, and was dangerous; but he thought it would hang until he could go to the shop and return, and while he was gone it fell; that the shop was 100 yards from the place of the accident.

On behalf of defendant evidence was introduced tending to prove that the Millsap bank was similar to other banks in the neighborhood; that they all have blind seams

of clay, not perceptible on the surface; that these banks are slippery and often produce slides when not guarded against; that in undermining an embankment to get a fall of dirt, into the excavation, the safer mode is either to blast from behind with powder and blow off the face of the banks, or to undermine, leaving steps or benches at the end, about every twenty feet, to support the bank and afterward to knock them out and let the earth fall into the excavation, and that the latter was a very common method with miners.

The following instructions were given for plaintiff, to which defendant excepted:

2.   If the jury believe from the evidence that the bank of earth was in an unsafe condition, and that its condition was known, or might have been known, to Griffin, the superintendent of the mine, by the use of due diligence, and that its unsafe condition was not known to plaintiff, and that the said bank of earth slid or fell upon plaintiff, whereby he was injured, the jury will find the issues for plaintiff.

3.   If the jury believe from the evidence that mining in defendant's mine was a hazardous business, then it was the duty of defendant to use every reasonable precaution to insure the safety of its employes; and if the jury find from the evidence that the bank of earth in said mine, described in the petition, slid and fell upon plaintiff, whereby he was injured, and that defendant did not use reasonable precaution under all the circumstances to insure plaintiff from injury by a fall of said bank of earth, or that defendant was careless and negligent in its mode and manner of working the bank of earth, and that said carelessness caused the injury, then the jury should find the issues for plaintiff.

The admission of the evidence of Morrison was a fatal error.   It was hearsay evidence.   The statements made by Griffin were, in no sense, a part of the *res gestae.*   After Aldridge was injured, a physician, who resided one-fourth of a mile from the bank, was sent for, and went to the bank, and had Aldridge put

1. DECLARATIONS OF AN AGENT.

into a buggy, which passed Morrison's store, conveying Aldridge to his residence, and immediately after it passed, but about an hour after the accident, Morrison went to the bank, and had the conversation with Griffin which he was permitted to relate to the jury. The question of what is admissible as a part of the *res gestae* was fully discussed in the case of *McDermott v. H. & St. Jo. R. R. Co.*, 73 Mo. 516; and adhering to the doctrines there announced, we hold the testimony of Morrison inadmissible.

Instruction numbered three, given at plaintiff's instance, is erroneous, in that it wholly ignores the question 2. MASTER AND SERV- of plaintiff's intestate's knowledge of the ANT: injuries from patent dangers. condition of the bank, which rendered it extra-hazardous to prosecute the work he was engaged in. There was testimony tending to prove that the Millsap bank was in a dangerous condition, without the crevice or seam in the clay, and that it was apparent to any one; and it should have been submitted to the jury to find from the evidence, whether that danger was so patent that an ordinarily observant man, whether experienced in the business or not, would have observed it. Nor is there any conflict between the proposition, that under such circumstances the employer would not be liable, and the doctrine announced in the *Porter case*, 71 Mo. 67, that "It is not incumbent upon the servant to search for latent defects in machinery or implements furnished him by his employer, and he has the right to assume that they are safe and sufficient for the purpose."

Although contributory negligence was not pleaded, yet one of the constituents of the cause of action stated in the petition is the allegation that, being ignorant of the extra-hazardous character of the work the deceased was ordered by defendant's vice-principal, who was aware of that danger, to proceed to work on the embankment. This alleged ignorance of the deceased was denied by the answer, and was, therefore, fairly and legitimately in issue; and if he did know of the existence of the seam, or crevice, and the

consequent danger, or if it was so patent that an ordinarily observant person, whether miner or not, would have discovered it, within the time deceased was at work on the bank, then such opportunity to know it would be held as knowledge, whether in fact he knew it or not, and in either case his employer would not be liable.

There is another class of cases to be distinguished from the cases supposed in the immediately preceding paragraph. They are those where, although the defect or imperfection is apparent, the employe proceeds to work, on an assurance given by the employer, that it is safe to do so. *McGowan v. R. R. Co.,* 61 Mo. 528, is of that class. In that class of cases the defect or imperfection is apparent, and, to one experienced in the work or in the implements, the danger is also apparent. In such case, unless the extra hazard is so palpable that no man of ordinary intelligence and prudence would at the risk of his life or limb incur it, the master would be liable to a servant whom he should order to perform the dangerous work, or work not dangerous with implements defective and unsafe.

The first instruction numbered two declares plaintiff's right to recover, if he was in fact ignorant of the existence of the crevice, and of the danger, although it may have been so patent and obvious that a man of ordinary intelligence and observation, in his situation would have seen it. This was error, and should be avoided on the re-trial of the cause. It is unnecessary to notice the alleged errors in the refusal of defendant's application for a continuance and the leave granted to plaintiff to file an amended petition.

The judgment is reversed and the cause remanded. All concur.