CHARLES MONAHAN, Respondent, v. THE KANSAS CITY CLAY & COAL COMPANY, Appellant.

Kansas City Court of Appeals, April 30, 1894.

1. **Master and Servant:** ASSUMPTION OF RISK: CONTRIBUTORY NEG-LIGENCE. Where the master furnishes an unnecessarily dangerous place for the servant to work, as the untimbered bottom of a deep coal shaft, though the servant knows the dangerous character, yet, to be held, as a matter of law, guilty of contributory negligence in undertaking the work when ordered, he must have seen that to do so would probably be attended with injury to himself, and that he could not avoid it by the exercise of care and caution, and the danger must be so obvious that no man of ordinary prudence would have attempted it, but would have abandoned the service of the company rather than pursue it under such circumstances. And this must be so patent that there can be but one conclusion in the minds of ordinary persons, *following Halliburton v. Railroad, ante.*

2. ———: ———: ———: JUDGMENT OF FOREMAN. The servant has a right to rely on the superior judgment of his foreman, especially so where the foreman encourages him to continue the work and practically assures him that the place was safe and would answer the purpose. Mere knowledge of the condition of things is not enough under the circumstances of this case to fix on the servant the charge of culpable negligence.

3. **Evidence:** OPINION OF WITNESS: SAFETY OF SHAFT: USUAL TIMBER: HARMLESS ERROR. A miner of thirty years' experience may give his opinion as to the usual and proper method of timbering a shaft, though it is well doubted if he can express an opinion as to the safety of a given shaft, where that is the question in issue before the jury; but where the same matter has been previously admitted without objection, such expression of opinion is *held* harmless.

*Appeal from the Jackson Circuit Court.*—HON. ED. L. SCARRITT, Judge.

AFFIRMED.

*James Black* and *Pratt, Ferry & Hagerman* for appellant.

(1) Whatever the danger, it was a risk incident to the employment. Plaintiff was foreman of the crew and he knew as much about the condition of the mine as defendant. *Watson v. Coal Co.*, 52 Mo. App. 366, is so nearly in point and reviews the authorities so fully that we need no more than refer to it. *Jackson v. Railroad*, 104 Mo. 448; *Thomas v. Railroad*, 109 Mo. 187; *Galveston & Railroad v. Lempe*, 59 Tex. 19; *Simmons v. Railroad*, 110 Ill. 340; *Anderson v. Winston*, 31 Fed. Rep. 528. (2) Questions 1 to 4, inclusive, propounded to the witness Sloan, were erroneous. Especially is this true of question 2. Whether the situation was safe was for the jury alone. *Gansk v. Railroad*, 49 Mo. 274, 277; *Eubank v. Edina*, 88 Mo. 650, 655; *King v. Railroad.* 98 Mo. 235, 240; *Griffin v. Willow*, 43 Wis. 409. (3) Plaintiff's instruction number 2 was erroneous. *First.* It was clearly a comment on the testimony. *Barr v. Kansas City*, 105 Mo. 550; *Willmot v. Railroad*, 16 S. W. Rep. 500. *Second.* It does not express the law. *Watson v. K. & T. Coal Co.*, 52 Mo. App. 366. The principle sought to be invoked is not applicable to the facts of the case. More than this, knowledge would defeat a recovery in any event if plaintiffs, in remaining in the mine, did not act with ordinary prudence. Under the instruction, knowledge would not defeat a recovery, although it took the highest degree of care to avoid injury. Even expressions in judicial opinions are unsafe guides for instructions. *Hurt v. Railroad* 94 Mo. 255, 263, 264. (4) Instruction number 2 was based on the facts and should have been given. *Watson v. K. &. T. Coal Co.*, 52 Mo. App. 366, and cases cited. (5) Instruction number 3 reads: "3. If whatever danger there was, if any,

was as apparent to Monahan as it was to Doran, then the plaintiff can not recover." This instruction presents the law as it obtains everywhere. If with as much knowledge of the danger as the general representative of defendant had, then if Doran was negligent in permitting the men to work in the mine it was negligence in plaintiff to so work. *Rush v. Railroad*, 36 Kan. 129, 135, 137. It has often been announced as a principle of law that if the knowledge of servant and master is equal there can be no recovery. *Porter v. Railroad*, 71 Mo. 66; *Watson v. K. & T. Coal Co.*, 52 Mo. App. 366.

*Byron Sherry* and *Roland Hughes* for respondent.

(1) The only defense made was a general denial and a plea of contributory negligence. There was no defense of assumption of risk, or that the accident was caused by negligence of fellow servant. (2) As to appellant's objection to the admission of testimony of Hugh Sloan, we suggest the same objection was made, by the same gentleman and the same authorities cited, in *Benjamin v. Railroad*, 50 Mo. App. 602, and was decided against them. This case was tried on the authority of that one. (3) The claim made by appellant's counsel in division (a) of point (1) was ruled as made in same way, by same counsel, as based on same authority, in case of *Culberson v. Railroad*, in this court, 50 Mo. App. 556, and ruled against them. Defendant's third instruction was properly refused. *Shortel v. City of St. Joseph*, 104 Mo. 120; *O'Mellia v. Railroad*, 115 Mo. 205; *Stephens v. Railroad*, 96 Mo. 209; *Keegan v. Kavanaugh*, 62 Mo. 230.

GILL, J.—This is an action for damages on account of personal injuries received by the plaintiff in Septem-

ber, 1892, while working for defendant in a coal mining shaft, then being sunk near Kansas City. The shaft was six by fourteen feet and had been sunk to the depth of about four hundred feet. At the time of the injury the plaintiff and two others were engaged in excavating at the bottom and were loading the loosened materials into tubs, which were raised to the surface by means of an engine at the mouth of the shaft. Said shaft was divided into three compartments, two for the lowering of the men and elevating the earth and stone, and one used as an air chamber. The linings of the shaft and partitions were composed of timbers and planks called "buntings." This frame work was carried along down as the shaft was sunk; and the plaintiff's evidence tends to show it was the safe and proper way to keep these casings and partitions down within a few feet of the bottom of the pit.

At this time, however, the buntings had not been brought down as usual, and they were left for several days about thirty feet above the bottom of the shaft. Plaintiff testified that he called the attention of the pit boss (the defendant's foreman in charge of the work) to this fact, and suggested that the bunting ought to be carried down further, but the boss directed them to proceed, that they would likely soon get to the coal, and they would then fix it. Plaintiff's evidence further tended to prove that it was necessary to have these partitions and framework nearer to the bottom, so as the more safely to guide the tubs of material as they were being elevated to the surface.

It was while raising a tub of rock and earth, and just as it got near the lower end of the bunting, that the tub varied from its course, swung around under the ends of the plank, and before the engineer at the surface could, or did, stop the machinery, a bunting was torn from its place and fell to the bottom of the pit

onto the person of the plaintiff, inflicting the injury of which he complains.

The case was submitted to a jury on instructions from the court, resulting in a verdict for the plaintiff in the sum of $400, and from a judgment thereon defendant appealed.

I. The main contention seems to be that the trial court ought to have given a peremptory instruction for the defendant. The basis of this claim is that the plaintiff, Monahan, continued the work at the bottom of the pit with knowledge of the attendant danger, that therefore he assumed all risks; in other words, that the plaintiff was guilty of contributory negligence and ought not to recover.

At this sitting we hand down an opinion in *Halliburton v. Wabash Railroad,* where can be found a review of all the law needed in the disposition of this case. The legal principles involved in the two cases are much the same. There are two questions here, as there—*first,* whether the master was negligent in providing a safe place for the servant to work; and, *second,* if it was unsafe, whether the servant was likewise negligent in entering in to work where there was manifest danger.

In the case at bar the jury, on sufficient evidence, have found that the defendant coal company negligently provided an insecure place for the plaintiff to work in; or, to be more specific, that the bottom of the shaft was an unnecessarily dangerous place by reason of the timbers and buntings not being sufficiently near the bottom, and that by reason thereof the plaintiff was injured. This now makes a *prima facie* case for plaintiff; and unless we find contributory negligence on his part clearly established, the judgment, founded on the verdict of the jury, must stand—or at least we must

decide that the lower court properly overruled a demurrer to the evidence.

As was said in the *Halliburton case*, before we can be justified in sustaining the defendant's contention and declare as a matter of' law that plaintiff made no case, we must hold that Monahan, when ordered to proceed with the work at the bottom of the pit, must have seen that to do so would probably be attended with injury to himself, and that he could not avoid it by the exercise of care and caution; that such danger was so obvious that no man of ordinary prudence would have attempted it, but would have abandoned the service of the company rather than pursue it under such circumstances. And we must hold, too, that as to this there could be *but one conclusion in the minds of ordinarily prudent persons.*

And as in the case, *supra*, we make the like answer; that we are not prepared to declare that plaintiff's conduct was clearly negligent. We can not say " that obedience in this case was so threatening to life and limb, so palpably attended with danger, that an ordinarily prudent workman would have rebelled and declined performance."

While Monahan knew of the condition of the bunting, and that it was not as near to the bottom of the pit as was usual, and as he thought it ought to be, and so informed the defendant's representative in charge, he was yet justified in the belief that he might with care proceed; he had the right to rely on the superior judgment of the boss, especially so as said foreman encouraged him to continue the work and practically assured him that it was safe and would answer the purpose till coal was reached. Hence the court rightly refused defendant's second and third instructions and properly gave plaintiff's number 2. Mere knowledge by plaintiff of the condition of things

was not enough, under the circumstances, to fix on him the charge of culpable negligence. *O'Mellia v. Railroad*, 115 Mo. 205–218, and cases cited. We do not think contributory negligence was clearly established, and therefore sustain the lower court in overruling a demurrer to the evidence.

II. Some complaint is made as to the admission of certain testimony of the witness Sloan, sworn on the part of the plaintiff. He was shown to be a coal miner of thirty years' experience; that he was at work in this shaft when plaintiff was injured, and was familiar with its conditions. Among other questions the witness was asked "whether it is safe for a man to work in a shaft with the buntings up twenty-five or thirty feet from the bottom of the shaft?" His answer was, "No, sir." *Q.* "State to the jury what is the proper way of constructing a shaft with reference to the buntings?" *A.* "To keep them down pretty low to the bottom of the shaft." *Q.* "What is the object in having them down there?" *A.* "As a matter of safety, so that the bucket will not catch; so that there will not be anything knocked loose, and the dirt off the sides don't cave in." These several questions were objected to by defendant's counsel on the ground of immateriality, etc., as calling for a mere opinion of the witness as to matter which was not proper for expert testimony.

It may be well doubted if it was proper to ask this witness whether the construction of the shaft was *safe*. This was rather a question to be left to the jury. We see no objection, however, to such testimony as tended to advise the jury as to the usual and proper construction of these shafts, the kind and extent of the timber linings used and the purpose thereof. These are such matters as are not within the common experience of men moving in the ordinary walks of life, and such

evidence will materially aid the jury who come from all avocations. *Gavisk v. Railroad*, 49 Mo. 274.

The witness had already been asked the following questions, and without objection he was permitted to answer: *Q.* "About what is the usual height in a shaft when you are digging it out; about how near the bottom do they ordinarily have these buntings and timbers?" *A.* "It would depend upon the size of your shaft, etc." *Q.* "Take a shaft of the size of the one that was being sunk at that time." *A.* "They ought to have been down lower, a good deal lower than they were." While now it may have been improper to ask the witness as to the safety of the pit, it will be seen from these quoted portions of the testimony which had gone to the jury without objection, that the opinion of the witness had already been practically given, and the evidence objected to added little to that already submitted without exception. At all events, the error, if error it was, was unimportant, and not such as to warrant a reversal.

The instructions given fairly presented every issue in the case; and as there was no substantial error at the trial the judgment will be affirmed. All concur.