JOHN WARNER, Respondent, v. THE CHICAGO, ROCK-ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, May 6, 1895.

1. **Master and Servant**: NEGLIGENCE: SERVANT'S KNOWLEDGE OF DEFECT: NOTICE. Mere knowledge of a defect in an appliance with which the servant is working will not, as a matter of law, bar a recovery, unless such instrumentality is so glaringly imperfect as to threaten immediate danger and that a man of ordinary prudence would see it could not be safely used with great care and skill.

2. ———: ———: ———: ———: MASTER'S ASSURANCE. Though the servant observe a defect which threatens injury, yet, if the master assures him there is no immediate danger and orders him to proceed, it is a question for the jury to determine whether the servant was negligent in heeding such assurance and obeying such orders.

3. ———: ———: ———: ———: ———. And the above rules *hold* where the implement or appliance is simple, easily understood and the defects are open to the servant's observation as well as in cases of complicated machinery; the duty of the master in both cases being the same, to exercise ordinary care, not only to provide a reasonably safe place, but reasonably safe machinery, etc.

4. ——: ——: INSTRUCTIONS. Certain instructions relating to the question of negligence as between master and servant, are reviewed and approved.

5. Trial Practice: CONTRADICTORY EVIDENCE: STENOGRAPHER'S NOTES. Certain evidence read from the official stenographer's notes of former trials is *held* harmless, without passing upon its competency.

*Appeal from the Daviess Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

*McDougal & Sebree* for appellant.

(1) The rules of law as to the duties of the master and the rights of the servant in the case of the use of complicated and dangerous machinery, where the defects are likely to be obscure and the position of the servant one of hazard and danger, are not applicable to cases of ordinary laborers working with simple tools or implements such as an ax, a hoe, a spade, or, as in this case, an ordinary ladder, the danger attending the uses of which is very slight and whose defects are readily discoverable and usually easily remedied by the person who uses them. *Meador v. Railroad*, 37 N. E. Rep. (Ind.) 721; *Marsh v. Chickering*, 101 N. Y. 396, 5 N. E. Rep. 56; *Corcoran v. Gas Company*, 81 Wis. 191, 51 N. W. Rep. 328; *Railroad v. Kelton*, 55 Ark. 483, 18 S. W. Rep. 933; *Power Co. v. Murphy*, 115 Ind. 570, 18 N. E. Rep. 30. It is neither alleged nor proved that by the promise to repair the ladder the defendant induced plaintiff to continue in its employment. This was necessary. Shearm. & Red. on Neg., sec. 99. (2) Instruction number 1 given on the part of the plaintiff states the law incorrectly and is misleading and prejudicial to the defendant. *Bohn v. Railroad*, 106 Mo. 429; *Moberly v. Railroad*, 98 Mo,

183; *Lee v. Knapp*, 55 Mo. App. 390; *Rapp v. Railroad*, 106 Mo. 423; *Gowen v. Harley*, 56 Fed. Rep. 973, 981. (3) The court committed error in giving instruction number 3 on the part of the plaintiff. (4) Instruction number 5 asked by the defendant ought to have been given. (5) The court committed error in allowing the purported testimony of witnesses Ronenspiess, Hiner and Mrs. Atherton, given on a former trial, to be read to the jury by the stenographer from her stenographic notes. There is no rule of evidence permitting a witness to be contradicted in this way, and the evidence was clearly incompetent. *Misner v. Darling*, 44 Mich. 433; *Phares v. Barber*, 61 Ill. 272; *Moore v. Moore*, 39 Iowa, 461; *Seeser v. Boekhoff*, 38 Mo. App. 445, 454.

*McCullough & Peery* and *Hamilton & Dudley* for respondent.

(1) The court did not err in refusing defendant's instruction number 1, to the effect that under the evidence the jury must find for the defendant. The three following propositions were unequivocally proved by plaintiff's evidence, and either one of them entitled him to recover. *First.* That the assistant master mechanic ordered him to use the ladder, knowing its defective condition. *Steinhauser v. Spraul*, 114 Mo. 556, 567; *Halliburton v. Railroad*, 58 Mo. App. 27; *Herriman v. Railroad*, 27 Mo. App. 443; *Keegan v. Kavanaugh*, 62 Mo. 232; *Stephens v. Railroad*, 96 Mo. 211; *Shortel v. St. Joseph*, 104 Mo. 118; *Cox v. Granite Co.*, 39 Mo. App. 424; *Sullivan v. Railroad*, 107 Mo. 66; *Aldridge v. Furnace Co.*, 78 Mo. 565; *Hall v. Water Works Co.*, 48 Mo. App. 364; *Schroeder v. Railroad*, 108 Mo. 332; *Guthrie v. Railroad*, 11 Lea, 372 (47 Am. Rep. 286). *Second.* That the assistant master mechanic assured him that there was no danger in using the ladder, and

thus lulled him into a sense of security. *McGowan v. Railroad*, 61 Mo. 532; *Rowland v. Railroad*, 20 Mo. App. 463; *Monahan v. Coal Co.*, 58 Mo. App. 68; *Aldridge v. Furnace Co.*, 78 Mo. 565; Wood, Master & Servant, sec. 352; *Stephens v. Railroad*, 96 Mo. 212; *Flynn v. Railroad*, 78 Mo. 204; *Wagner v. Chem. Co.*, 147 Pa. St. 475 (30 Am. Rep. 745). *Third.* That the assistant master mechanic promised plaintiff to have the ladder repaired, and repeated this promise several times during the week preceding the injury. *Conroy v. Iron Works*, 62 Mo. 35 (s. c., 75 Mo. 651); Cooley on Torts, 559; *Hyatt v. Railroad*, 19 Mo. App. 294; Wood on Master & Servant, sec. 352; *Stephens v. Railroad, supra; Flynn v. Railroad, supra; Hough v. Railroad*, 100 U. S. 213–225; *Patterson v. Railroad*, 76 Pa. St. 393; s. c., 18 Am. Rep. 412; *Railroad v. Croker*, 41 Kan. 747; s. c., 13 Am. St. Rep. 320; *Brownfield v. Hughes*, 128 Pa. St. 194; s. c., 15 Am. St. Rep. 667: *Railroad v. Duffield*, 12 Lea, 63 (47 Am. Rep. 319). (2) Instruction number 1 for plaintiff is not erroneous. *O'Mellia v. Railroad*, 115 Mo. 211; *Reichla v. Gruensfelder*, 57 Mo. App. 57; *Halliburton v. Railroad, supra; Monahan v. Coal Co., supra.* Instruction number 4 asked by defendant puts the question much more strongly. *Whitmore v. S. Lodge*, 100 Mo. 47. "The plaintiff had the right to assume that the ladder furnished was reasonably safe and secure, and that he could use the same without danger." This, we think, has always been the law of this state. *Porter v. Railroad*, 71 Mo. 77; *Lewis v. Railroad*, 59 Mo. 506; *Steinhauser v. Spraul, supra; Drey v. Doyle*, 99 Mo. 465; Thompson on Trials, secs. 2338–2341; *Storck v. Mesker*, 55 Mo. App. 38; *Bank v. Armstrong*, 92 Mo. 265; *Reilly v. Railroad*, 94 Mo. 600; *Thorpe v. Railroad*, 89 Mo. 650; *Cole v. Railroad*, 47 Mo. App. 629; *Jennings v. Railroad*, 99 Mo. 394. (3) The objection that plaintiff's instruction number 3

ignores the defense of contributory negligence is wholly without foundation. (4) The refusal of defendant's instruction number 5 was not error. *Railroad v. Croker*, 13 Am. St. Rep. 323; *Reber v. Town*, 11 Mo. App. 207; *Britton v. St. Louis*, 120 Mo. 445; *Burdoin v. Trenton*, 116 Mo. 358. (5) No error was committed in allowing the official stenographer to produce and read from her notes of the former trial the testimony of the witnesses Ronenspiess, Hiner and Atherton. *State v. Jefferson*, 77 Mo. 138.

GILL, J.—This is an action for damages on account of personal injuries received by the plaintiff in falling from a defective ladder, in use at the defendant's coal chutes in the yards at St. Joseph, where the plaintiff was employed. The coal bins were located on a platform, raised about twenty feet above the surface of the ground, and the only means for reaching these bins and chutes, where plaintiff and others worked, was a ladder constructed at the end of the platform. The ladder was twenty feet long and composed of two perpendicular pieces of timber, having the rounds mortised in or nailed to the side pieces. Owing to the long use of the ladder, these rounds or cross pieces (particularly about the middle of the ladder) had become worn, and, therefore, weak.

While the plaintiff was descending the ladder in the course of his employment, on July 28, 1890, one of these rounds broke, and he fell to the ground, striking the sharp corner of a scantling, producing a fracture of the shoulder, rendering him unfit for labor for a long time; and the evidence tends to show that said injuries are permanent.

The plaintiff and two other witnesses testified substantially that about a week or ten days before he was injured, plaintiff called the attention of defendant's

assistant master mechanic, George Brown (by whom he was employed and under whose orders he was working), to the defective condition of the ladder, and told him that it ought to be repaired; that he was afraid some one would get hurt; that the assistant master mechanic told plaintiff to go on with his work; that he did not think there was any danger, and that he would have it repaired. The plaintiff also testified that he spoke to Brown about the ladder several times after this, during the week before he was hurt, and that Brown promised each time to have it repaired, and told him, in effect, to go ahead; that he did not think there was any danger; that he continued to work, expecting every day that the ladder would be fixed.

The defendant's master mechanic admitted that plaintiff· complained of the defective condition of the ladder, but further stated that he instructed the plaintiff to go to the roundhouse and get tools and materials, and repair it. Plaintiff and his witnesses denied that any such instructions were given.

The petition charged defendant with negligence in maintaining an insecure ladder; that it failed to repair same when advised of its condition, but promised plaintiff from day to day to do so, and thereby induced him to continue the use thereof, etc. The answer admitted the plaintiff's employment, and that he fell from the ladder and was injured; but charged that such injuries were the result of plaintiff's own negligence, and that he (the plaintiff) all the time had knowledge of the defective condition of the ladder. The issues were tried by jury, resulting in a verdict and judgment for plaintiff in the sum of $1,600, and defendant appealed.

I. The first and main point relied upon by defendant in this appeal is that the evidence showed no right of recovery, and that the trial court ought to

have nonsuited the plaintiff. The contention of defendant's counsel, urged with marked ability in both printed and oral argument, is that, as the plaintiff was using a simple appliance (the ladder) the condition of which was obvious and known to him, he assumed all risk arising therefrom; in other words, that the plaintiff knew of the defects in the ladder and continued to use it, and that, therefore, he brought himself within the operation of the rule that a servant can not recover for those injuries resulting from causes seen and known to him.

The principle here invoked by defendant's counsel (that is, that the servant can not recover when he has prior knowledge of the defect) is subject to several qualifications or exceptions. For example, it has been repeatedly held in this state (*Huhn v. Railroad,* 92 Mo. 440, being a leading case) that mere knowledge of a defect in the appliance with which the servant is working, will not, as matter of law, bar a recovery, unless such instrumentality is so glaringly imperfect as to threaten immediate injury—so defective that a man of ordinary prudence would see that it could not be safely used with great care and skill. So, too, even when the condition of the instrument, machinery or place is such as to threaten injury and the servant observes it, yet, if the master assures the servant that there is no immediate danger and orders him to proceed, it will then be left to the jury, or trier of the facts, to determine if the servant was negligent in heeding such assurance and obeying such orders. *Stephens v. Railroad,* 96 Mo. 207; *Halliburton v. Railroad,* 58 Mo. App. 27, and cases cited.

It is, then, incorrect to say that the servant's prior knowledge of imperfections or danger is always conclusive against his right of action. It is, in all cases, evidence tending to establish culpable negligence

on his part, and which, unexplained by other circumstances, may conclusively show such contributory negligence as will preclude recovery; but this marks the limits of the rule. Wood, Master and Servant, sec. 352; 1 Shear. and Red. Neg. [4 Ed.], sec. 209. After all, such knowledge of the servant or employee is only an element of evidence, which should go to the jury as tending more or less strongly to prove the contributory negligence on the part of the complaining party.

The case in hand, viewed in the light of plaintiff's evidence, comes clearly within the foregoing principles. While it is true that the plaintiff observed the worn and weakened condition of the ladder and called the master's attention thereto, it can hardly be said that the danger of its use was so glaring and threatening to an ordinary workman as to call upon him to abandon his employment. The laborer might reasonably think that with proper care he could continue the use of the ladder for a while longer without any immediate peril. The jury might well conclude that an ordinarily prudent man would, under the circumstances, continue to work. Moreover, the conduct of the plaintiff is further removed from the charge of absolute contributing negligence when it is remembered that his superior, the master mechanic in charge of the yards, assured him that there was no immediate danger, ordered him to go ahead, and promised repairs in a short time. And the evidence tends to prove that plaintiff continued the performance of his duties, relying, as he had the right to do, on the superior judgment of the master mechanic and the promise to repair. The duty of inspection and repair rested on the latter; obedience to orders belonged to the former. Hence it is said that the master and servant are not on equal terms in this regard. "An assurance from one representing the master that the machinery or apparatus being used is all right,

and an order from him to the servant to use it, notwithstanding a complaint of the servant as to its sufficiency, amounts to a guaranty of safety, and the master will be liable for any injury then resulting from its prudent use." *McGowan v. Railroad*, 61 Mo. 528; *Rowland v. Railroad*, 20 Mo. App. 463; *Aldridge v. Furnace Co.*, 78 Mo. 559; *Monahan v. Coal Co.*, 58 Mo. App. 68; *Keegan v. Kavanaugh*, 62 Mo. 230.

Defendant's counsel have, however, urged with much force that the above rule only holds where the servant is employed in the use of *dangerous* and *complicated* machinery, and that it is not applicable in cases such as this, where the implement or appliance is simple, easily understood, and the defects of which are as open to the observation of the servant as to the master. Cases in other jurisdictions are cited which seem, in some degree, to sustain this contention. Such a distinction, however, finds no support in the appellate courts of Missouri. Nor do we know of any principle of law that will hold the master to an obligation to provide reasonably safe machinery and appliances, where they are dangerous and complex in their nature, and at the same time exempt him from such duty when the implements are simple in construction. The rule, generally expressed, is always the same. The master is required under the law to exercise ordinary care, not only to provide a reasonably safe place for the servant to work in, but to put into his hands reasonably safe machinery and instrumentalities and to use due care in keeping such in good repair. The care required of the master in furnishing the appliances to the servant, and in keeping the same in repair, is *ordinary* care—such care as would be expected of a reasonably prudent master under the same circumstances. The master is required to act prudently and with reasonable diligence to protect the servant. But,

what is reasonable and prudent—what is ordinary care —depends largely on the circumstances of the individual case. If the servant is employed to operate machinery of a highly dangerous character, the prudent, cautious master would likely inspect more closely —would be more diligent in detecting defects, knowing the probable consequences if the machinery was allowed to get out of order. If, however, the appliances are simple and innocent in their nature—such as if out of repair even would not probably result in injury to the servant—then the ordinarily prudent man would not be so vigilant as in former instance, since the peril would not be so great, or the chances for injury so proximate. And so probably would the jury, or trier of the fact, consider each individual case —in the light of the circumstances—and determine whether or not the master had therein exercised reasonable or ordinary care. The character, then, of the machinery, appliances, or place, enters into the list of circumstances attending each case, and which are to be considered in determining what a prudent master would have done in the light thereof. And this care— such as a prudent man would, under similar conditions, have exercised—is the measure of diligence required of every master. If the jury should find in a given case that the defendant master has fallen short of this measure of reasonable diligence, or ordinary care,— whether it be in the furnishing or repairing dangerous or simple machinery—and the careful servant, by reason thereof, should be injured, then the defendant must be held liable, otherwise not.

We do not think, then, the plaintiff in the case at bar can be denied a recovery merely because the ladder which broke with him and caused the injury was a simple contrivance. This was a circumstance

to be considered along with other facts in determining the charge of negligence made against the defendant and the countercharge of contributory negligence made against the plaintiff. As aptly stated by plaintiff's counsel, this ladder leading up to the coal chutes was no more simple in construction or design than the loose planks or timbers in *Conroy v. Iron Works*, 62 Mo. 35, than the defective staging in *Sullivan v. Railroad*, 107 Mo. 67; than the rope in *McGowan v. Railroad*, 61 Mo. 528; than the buntings in *Monahan v. Coal Co.*, 58 Mo. App. 68; than the embankment that fell upon Keegan in the *Kavanaugh case*, 62 Mo. 230, and other similar appliances and conditions that have been reviewed by the courts of this state, and where, too, the master was held to the ordinary circumspection and care for the safety of the servant.

A demurrer to the evidence was properly overruled.

II. Defendant's counsel have made some criticisms on the court's instructions. But after a careful consideration of all these, separately and together, we fail to discover any substantial error. The duty of the railroad company to exercise ordinary care in providing a reasonably safe ladder for the use of the plaintiff and others engaged at the coal chute, was fairly stated in the court's charge to the jury. It is true that in one of the instructions it was declared the duty of the defendant "to furnish plaintiff a ladder that was reasonably safe and secure," yet further on, by defendant's instruction number 9, the court cautioned the jury, "that the defendant, when the plaintiff entered its employ, did not guarantee his safety, but only undertook to exercise ordinary care therefor." The objections taken to plaintiff's instruction number 1 are entirely without merit. It is after the pattern

frequently approved by the courts of this state. *O'Mellia v. Railroad*, 115 Mo. 217.

On the other hand, the court's instructions exacted the exercise of ordinary care on the part of the plaintiff; and in explicit terms advised the jury that plaintiff could not recover, ''if the danger from using said ladder was so glaring and apparent that a person of ordinary prudence and caution, in the position of plaintiff, would not have undertaken the risk;'' or if ''the defendant's foreman, or master mechanic, ordered, instructed or directed plaintiff to repair said ladder and that plaintiff failed to do so and was injured in consequence of said failure.''

In short, every phase of the case, whether for plaintiff or defendant, was fairly and intelligently presented to the jury by clear and unambiguous instructions and we therefore discover no reason for disturbing the judgment because of any objections to the court's charge to the jury.

III. Further exceptions are taken to the action of the trial court in permitting the court stenographer to read to the jury from her stenographic notes, taken at a former trial, the alleged testimony of witnesses Ronenspeiss, Hiner and Atherton. These parties had testified for the defense at both trials, and the plaintiff's effort was, probably, to impeach them by showing that they had not told the same story on both occasions.

We find it unnecessary to determine the competency of this evidence, since a careful scrutiny of the matters thus permitted to go to the jury convinces us that it was entirely harmless. The testimony of these witnesses at the former trial, as given out by the stenographer, and read from her notes taken at the time, was substantially the same as given at the last trial. Ronenspeiss testified on both occasions that in 1890, a short time before plaintiff fell from the ladder, he

warned the plaintiff to be more careful in going down the same and advised him to get materials from the roundhouse and repair the ladder.  At the first trial, he gave it as his opinion that he first spoke of this incident in the fall of 1892; whereas at the second or last trial, he thought it was in 1891 that he first informed anyone as to this conversation with plaintiff.  Witness Hiner, at each examination, detailed a conversation had with plaintiff before his fall from the ladder to the effect that plaintiff's shoulder had been injured by wrestling; but at the last trial the same witness further testified that plaintiff, while at work at the coal chute, acted as a foreman or "straw boss," and was in the habit of changing the boards on the platform, etc.  He was asked if he said anything of this at the first trial and he admitted that he did not, and stated, as a reason, that he was not asked.  The notes of the stenographer in this respect corroborated the witness.  Mrs. Atherton's testimony at the last trial was to the same effect as at the former.

So then the admission of the stenographer's notes, taken and preserved at the first trial and as read to the jury, did not in the least reflect on the credibility of these witnesses.  It tended rather to strengthen and support the testimony at the last trial.  And surely this could not prejudice the defendant.

Discovering no errors prejudicial to the defendant, the judgment is affirmed.  All concur.