## CHARLES DANDO et al., Respondents, v. HOME TELEPHONE COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted April 27, 1909. Opinion filed June 22, 1909.

1. NEGLIGENCE: Contributory Negligence: Instructions. In an action under the Damage Act for the death of plaintiffs' son, caused by the breaking of a rope which suspended a platform upon which he was working twenty-five or thirty feet from the ground, an instruction which directs a finding for defendant, if the jury believe from the evidence deceased was leaning against the rope when it broke and that such conduct on his part was obviously unsafe and caused the rope to break, specifically and correctly covers the question of contributory negligence on the part of deceased.

2. ————: Damage Act: Sufficiency of Evidence: Case Stated. The petition charged defendant with negligence in furnishing a platform which it negligently suspended by means of ropes of inferior quality and of size and strength insufficient to sustain the weight of the platform and the operatives required to work thereon, the ropes used being old and weak and greatly reduced in strength by use and exposure to the weather, and in negligently using said ropes without first testing them. The evidence tended to prove that deceased was working on a platform which was suspended from a cable by means of ropes fastened to each of its four corners; that deceased and his fellow-workmen hung the platform on this occasion; that the ropes looked old, dark, discolored, weather-beaten, worn and dirty, and

Dando v. Telephone Co.

no test was applied to determine the actual condition of the fibers and twists; that the rope which broke was one-half inch manilla, supposedly of the best kind made and of the size commonly used, and had been in use two months; that deceased had tested the rope on this occasion by pulling on it; that deceased, while doing his work fell to the ground by reason of the breaking of one of the ropes, against which he was leaning, receiving injuries that resulted in his death. *Held*, there was ample evidence to sustain a verdict for plaintiff.

3. **DAMAGES: Excessive Verdict.** A verdict for $1600 in favor of plaintiffs, their deceased son being eighteen years and six months old at the time of his death, was not excessive.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

AFFIRMED.

*Sebree, Farrington, Pepperdine & Wear* and *Gleed, Hunt, Palmer & Gleed* for appellant.

(1)   A rope is an implement of simple construction, presenting no complicated question of power, motion or construction, and a servant in using it daily is bound to notice at his peril the ordinary wear and tear of the rope, and, if he is injured through a failure so to do, cannot recover from the master.   Forbes v. Dunevant, 198 Mo. 193; Miller v. Railroad, 47 N. Y. Sup. 285; Marsh v. Chickering, 5 N. E. (N. Y.) 56; Cahill v. Hilton, 13 N. E. (N. Y.) 339; Patnode v. Harter, 20 Nev. 303; Beckman v. Brewing Assn., 98 Mo. App. 555; Cregan v. Marston, 27 N. E. (N. Y.) 952. The mere fact that the rope broke is not evidence of negligence in this regard.   Bowen v. Railroad, 95 Mo. 268; Smith v. Railroad, 113 Mo. 70; O'Donnell v. Baum, 38 Mo. App. 245.   There was therefore no evidence of negligence on the part of defendant in failing to test the rope, and negligence will not be presumed.   Pense v. Railroad, 51 Mo. App. 171.   From the nature of the work done by them with the ropes it was their duty to test the ropes.   Light Co. v. Rombold, 97 N. W. (Neb.)

1030; Anderson v. Telephone Co. (Wash.), 53 Pac. 657; Flood v. Telephone Co. (N. Y.), 30 N. E. 196. Both under the evidence and under the law, therefore, it was Dando's duty to test the rope for himself; if he failed to do so he was negligent and cannot recover. Nicholds v. Glass Co., 126 Mo. 55. (2) The instructions enlarged the issue. The only issue under the petition was whether or not the ropes were defective in the first instance. The issue under the instruction was whether they were defective in the first instance, or whether they had subsequently become defective at any time up to the time when they broke, to defendant's knowledge. The giving of this instruction was therefore error. Brown v. L. & L. Co., 65 Mo. App. 162; Smith v. Railroad, 126 Mo. App. 120; Raming v. Railroad, 157 Mo. 477; Bohn v. Railroad, 106 Mo. 429; O'Brien v. Steel Co., 100 Mo. 82; Current v. Railroad, 86 Mo. 62. (3) The court refused all instructions requested by defendant as to burden of proof, contributory negligence, and unavoidable accident, and gave no equivalent instructions. The only instruction it gave as to contributory negligence was that if Dando was negligent, plaintiffs could not recover. It refused all instructions showing what particular acts would constitute contributory negligence. The refusal of these instructions was error. McKinney v. Guhman, 38 Mo. App. 344.

*Delaney & Delaney* for respondents.

(1) The question at issue is, Did the defendant furnish deceased with proper appliances and a safe place in which and with which to do his work? Not on August 14, 1904, the day defendant claims it bought the rope and ordered platform rigged, but on October 24, 1904, the day Jimmie Dando was killed? Zellars v. Mo. W. & L. Co., 92 Mo. App. 107; Franklin v. Railroad, 97 Mo. App. 473; Robbins v. Mining Co., 105 Mo. App. 78; Curtis v. McNair, 173 Mo. 270. The perform-

ance of this duty, owing by defendant, to deceased, could not be shifted to Robinson or to any one else. Zellars v. Mo. W. & L. C., 92 Mo. App. 197. (2) In order to make defendant liable, it is not necessary to prove that it had actual knowledge of the defective condition of the rope on October 24, 1904, or prior thereto. It is sufficient if the evidence show it might by the exercise of ordinary care, taking into consideration the hazardous nature of the services to be rendered, have acquired knowledge of the condition of the rope. Herbert v. Mound Co., 90 Mo. App. 305. Nor is the knowledge of the employer to be measured by the knowledge of the employee, for it is the duty of the employer, if he does not know that the rope is safe, to exercise proper care to ascertain whether it is safe or not before furnishing it for the servant's use and before permitting its use day by day unless the employee's opportunity to know is better than the master's could possibly be. Such is not the fact in this case. Hester v. Jacob Dold Pkg. Co., 84 Mo. App. 451; Thompson v. Railroad, 86 Mo. App. 41. Nor in order to fasten liability on the master for furnishing defective appliances, is it necessary to show that the employee was ignorant of the true condition of the appliances. Cardwell v. Railroad, 90 Mo. App. 31; Hamman v. Coal Co., 156 Mo. 232; Mennier v. Railroad, 167 Mo. 99. (3) The presumption of law is, until the contrary is shown by the evidence, that in going upon the platform at the time of his death deceased was exercising due and reasonable care. Priesmeyer v. Transit Co., 102 Mo. App. 518. Rogers v. Printing Co., 103 Mo. App. 683; Riska v. Railroad, 180 Mo. 168. In considering the question whether plaintiff was guilty of such contributory negligence as precludes his right to recover, courts will view the whole evidence in the most favorable aspect in behalf of plaintiffs. Myers v. Transit Co., 99 Mo. App. 363. Even if deceased had knowledge of the condition of the rope, this will not prevent a recovery by

plaintiffs unless the defects of which deceased had knowledge are of such a character as to threaten immediate danger. Prophet v. Kemper, 95 Mo. App. 219; Studenroth v. Hammond Pkg. Co., 106 Mo. App. 480; Bain v. Heibel, 103 Mo. App. 621; Jones v. Railroad, 178 Mo. 528. A servant may assume that the master has furnished a reasonably safe place for him to work, with the exercise of ordinary care, until the defects in the appliance become so obviously dangerous as to deter an ordinarily prudent man from continuing in this work. Hester v. Jacob Dold Pkg. Co., 95 Mo. App. 16; Franklin v. Railroad, 97 Mo. App. 473; Parsons v. Hammond Pkg. Co., 96 Mo. App. 362. Evidence must show that deceased thoroughly comprehended the danger and freely accepted it. Dean v. W. W. Works, 106 Mo. App. 167; Thompson v. Railroad, 86 Mo. App. 141. (4) Robinson was not a fellow-servant of deceased. He was vice-principal. Especially is this true under the evidence which discloses, at the time and place of the accident and during the progress of the work theretofore, the absence of Speed the manager of defendant company. Kelly v. Stewart, 93 Mo. App. 47; Browning v. Kasten, 107 Mo. App. 59; Bane v. Irwin, 172 Mo. 306; Fox v. Jacob Dold Pkg. Co., 96 Mo. App. 173; Stephens v. Deatherage Lbr. Co., 98 Mo. App. 365; Bien v. Transit Co., 108 Mo. App. 399; Hunt v. Lead Co., 104 Mo. App. 377; Borden v. Falk Co., 97 Mo. App. 566. The fact that Robinson worked in conjunction with deceased does not change his relation either to the company or to the deceased. A foreman or vice-principal cannot divest himself of responsibility by doing common work with those under him and thereby enable his employer to escape responsibility for injuries occasioned by his negligence on the plea of being fellow servants. Haworth v. Railroad, 94 Mo. App. 215. It was the duty of Robinson as vice-principal to see that proper appliances were furnished. (5) It will also be noted that

there is no plea of contributory negligence. The only facts which could possibly be tortured into evidence of contributory negligence are that deceased "did not straddle the platform while at work," but on the contrary "stood up with his back leaning against the rope." These facts, however, did not develop in the plaintiff's case, hence no instruction can be predicated thereon because there was no plea of contributory negligence. Allen v. Transit Co., 183 Mo. 411; Chaney v. Louisiana & Mo. Co., 176 Mo. 598. So even if deceased knew the danger—had knowledge of the defective condition of the rope—and saw that it was glaringly defective and that danger was imminent; this will not preclude a recovery because it would only amount to contributory negligence and such defence is not pleaded. Notwithstanding the premises, the court gave instructions defining contributory negligence and submitted that issue to the jury.

STATEMENT.—Action to recover damages for the death of James Dando, minor son of plaintiffs. The petition, after stating the relationship of the parties and the business of defendant as operator of a telephone system, avers that James Dando was in the employ of the defendant at Springfield, and without the knowledge of plaintiffs of the dangerous character of the work in which he was engaged, was engaged in a hazardous employment, that is, in splicing cable; that to perform the work, it was required that James work on a platform suspended under and from the wires on which he was working, at a distance of 20 or 25 feet from the ground; that notwithstanding the duty of the defendant to furnish a safe platform, and to secure and safeguard James while in the discharge of his duties and to suspend the platform by ropes of quality and size sufficient to make it reasonably safe, defendant had carelessly and negligently furnished a dangerous and defective place in which to work, in that the defendant had furnished a platform which it careless-

ly and negligently suspended by means of rope of inferior quality and of size insufficient to sustain the weight of the platform and of the operatives required to work thereon, and had carelessly and negligently used in the work, rope of inferior quality and insufficient strength, the ropes furnished being old and worn and greatly reduced in strength by use and exposure to the weather, and without having first been tested; that on the 24th of October, 1904, James Dando, by direction of defendant, entered upon his duties and went upon the platform, which was defectively secured and supported by the defective ropes, and that he did so under the direction of one George Robinson, his superior and vice-principal; that James was at the time inexperienced, and relied upon the superior knowledge of Robinson, and that he went upon the platform under the direction of the defendant through Robinson, its vice-principal; that while he was working on the platform, one of the ropes supporting it broke and precipitated James from the platform to the ground, inflicting injuries from which he died, the fall being occasioned by the defective character of the ropes and dangerous situation in which James was required to work.

The answer was a general denial and set up contributory negligence and assumption of risk.

It appeared by the evidence in the case that the deceased was eighteen years and six months of age and unmarried at the time of his death and was in the employ of defendant as a cable-splicer's helper. It was the business of the cable-splicer to splice two cables together and while that was being done the two ends of the cable are hung by hooks to what are called messenger wires or strands composed of twisted steel wires strong enough to support the cable. Each cable-splicer has a platform for himself and helper for use in splicing the cables. This platform is thirty inches wide and forty-eight inches long, with a rope at each corner by

which it is suspended from the messenger wires. The cable-splicer and his helper hang their own platform, the helper hauling the platform up by the ropes and the cable-splicer fastening it in place. The cable-splicer, was one George Robinson, young Dando being his helper, and when they had occasion to go to their work, they took the platform out of the tool house, which was a dry place. Robinson and Dando had used the platform and these ropes frequently, and had hung the platform on this occasion by these ropes. Dando was accustomed to pull the platform up by the ropes. It was in evidence that the ropes looked old, dark, discolored, weather-beaten, worn and dirty. Further than that, no test seems to have been applied to determine what the actual condition of the fibers and twists of the ropes were. No one else but Robinson and Dando appear to have used the ropes. Whether or not they had selected them themselves on this particular occasion is not very clear. The superior officer of these two men testified that the rope which broke was a one-half inch manilla rope, supposedly of the best kind made and of the size commonly used,—when new, capable of holding from 1,760 to 3,000 pounds. The ropes when put on the platform on August 16, 1904, were new, and the accident occurred two months later. There was testimony tending to show that Dando and Robinson had tested the ropes every time they used the platform by pulling on them, and had tested them that way the morning of the accident. At the time that the accident occurred, the platform was swung in place, and the work of splicing was under way. Dando was on his toes, in a crouching position, leaning back against one of the ropes and the rope broke. This is practically all the evidence in the case as set out in the statement by counsel for the defendant. Verdict and judgment for plaintiff for $1,660, from which, after interposition of motions for new trial and in arrest, exception being duly saved, defendant appealed.

REYNOLDS, P. J. (after stating the facts).—
It is utterly impossible to determine with any cer-
tainty what instructions were given and refused and·
at whose request instructions were given. In the ab-
stract prepared by counsel for defendant, instructions
numbered, 1, 2, 3, 4, 5, 6, 7, 8, 12, 13, 14, 15 and 16,
are embodied as instructions which were asked by the
defendant and which were refused, and to which refusal
exception was saved. It is set out that instructions
numbered 9, 17 and 18, which were requested by de-
fendant, were given. There appears to be but one in-
struction given to which exception was taken and that
is noted in the abstract as having been given by the
court of its own motion. In the supplemental or ad-
ditional abstract, submitted by counsel for plaintiff,
six instructions are set out which it is claimed were
marked "given" by the court, but omitted by defendant
in preparing the abstract of the record. We are not
advised by the abstract or the supplemental abstract
as to the party at whose instance these instructions
were asked. The instructions which are set out by
plaintiff in the additional abstract, in substance, de-
clare the defendant is not an insurer of the lives of
persons in its employ nor required to furnish abso-
lutely safe appliances nor the most approved appli-
ances. "Reasonable care" is defined and an instruc-
tion is noted as having been given which declares that
it devolves upon plaintiffs to prove the facts hereinbe-
fore predicated for recovery "by a preponderance or
greater weight of the evidence and unless they have
here so done, your verdict will be for the defendant.
The mere fact that the rope broke is not to be consid-
ered by you as evidence of negligence on the part of
the defendant, and also if the death was the result of
an accident not reasonably liable to be foreseen by
reasonable care then your verdict should be for defend-
ant." In another of these instructions, which we are
told in the additional abstract was given, the jury were

told that it was the duty of the deceased to be reasonably careful for his own safety and to employ all of his senses to that end, but that in the absence of an obvious defect and known danger he had a right to assume that the appliance furnished him was reasonably safe for the purpose for which he was expected to use it. On the other hand it was the duty of the defendant to use reasonable care in the selection of appliances and while in use to continue such reasonable care by reasonable precaution so as to maintain such appliances in a reasonably safe condition for use by its employees. Another instruction of those marked "given," is that if plaintiffs' son was leaning against the rope when it broke, and if such conduct on his part was obviously unsafe and dangerous and caused the rope to break, then plaintiffs are not entitled to recover; and the final one claimed to have been given is on the measure of damages, but is word for word instruction marked No. 18, given by the court at the request of the defendant. This case was here before on an appeal and reversed for error in the instruction concerning the measure of damages. It is reported 126 Mo. App., page 242. The instruction as to the measure of damages, given at this last trial, whoever asked it, is correct; but as will be noticed, it is impossible for us to tell whether the instructions contained in the additional abstract submitted by counsel for plaintiff were given at the instance of plaintiff or defendant, and we are not informed whether exceptions were taken by either party to them. It is set out as an assignment of error in the case, that there was no evidence whatever that justified the case to go to the jury, particularly no evidence that defendant did not fully perform its duty in testing the rope, and it is argued that the mere fact that the rope broke is not evidence of negligence in this regard. It will be noticed that one of the instructions set out by defendant's counsel as having been given specifically covers this proposition in the most favorable light possible

for the defendant, the jury being told in so many words that the mere fact that the rope broke was not to be considered by them as evidence of negligence on the part of defendant.

The second point of argument on which authorities are cited is on contributory negligence, it being averred or assigned as a ground for reversal, that the jury were not instructed upon that issue. One of these instructions which is set out in the additional abstract specifically and correctly covers the doctrine of contributory negligence.

The third proposition or point made by the learned counsel for defendant is that the court refused all instructions requested by defendant as to burthen of proof, contributory negligence and unavoidable accident, and gave no equivalent instructions. This assignment is clearly and unmistakably disproved by the instructions, which, we are told by the additional statements, were given. Beyond the general statement or assignment that there is no evidence to sustain the verdict, this covers all the assignments of error contained in the very elaborate briefs and arguments submitted by counsel for the defendant. In this state of the record before us we find no reversible error; there is ample evidence to sustain the finding; the verdict does not appear excessive, the measure of damages, as we before stated, is correctly announced, and we cannot say that the jury misconceived the direction of the court in its award. Finding no reversible error in the condition that the abstract of the record places this case before us, the judgment of the circuit court is affirmed. All concur.