HIRAM ROBBINS, Respondent, v. THE BIG CIRCLE MINING COMPANY, Appellant.

Kansas City Court of Appeals, February 1, 1904.

1. **MASTER AND SERVANT: Negligence: Usual Course: Evidence.** No inference of negligence can arise from evidence which shows that the instrument used was such as is ordinarily used for like purpose by persons in the same business; but this rule can not apply to the evidence in this case since the hammer complained of is not shown to be in general use by miners in the same business, but rather that such defective hammer though frequently used, constituted an exception to the general custom.

2. ———: ———: **Assumption of Risk: Safe Appliances.** While the servant assumes the ordinary risk incident to the business the master is still bound to furnish the servant with reasonably safe instrumentalities to do his work; and the servant is not

obliged to refuse to use the appliances if he reasonably believes he can safely use them by the exercise of proper care, and if he does use them, exercising such care, he does not waive his right to compensation for injury.

3. ——: ——: Safe Appliances: Issue. On the trial of the question of negligence in furnishing a certain hammer to be used in breaking rock and mineral the question is not what would be a safe hammer nor whether the hammer was unsafe because of long use, but whether from long use it had become unfit to be longer used with the exercise of reasonable care and caution; and the defendant is held to have known the condition of the hammer and the question for the jury was whether upon the evidence it was reasonably safe to be used with the exercise of due care.

Appeal from Jasper Circuit Court.—*Hon. J. D. Perkins,* Judge.

AFFIRMED.

*W. R. Robertson* for appellant.

(1) Absolute safety is unattainable, and employers are not insurers. Courts should not set up a standard which will "in effect" dictate the customs or control the business of the community. Minnier v. Railway, 167 Mo. 120; Brown v. L. & L. Co., 65 Mo. App. 165. (2) The rule that it is the duty of the master to inspect appliances is not applicable in this case because it would not have disclosed anything more than the plaintiff was presumed, on account of his age and experience, to know about it. Shea v. Railroad, 76 Mo. App. 33; Herbert v. Mound City B. & S. Co., 90 Mo. App. 316. (3) Plaintiff will not be heard to say that he was ignorant of the condition of this hammer, as he alleged in his petition that the hammer had "broken and splintered edges about the face thereof," and his long experience with machinery and in the mines rendered him as familiar with the dangers, if any, of a hammer presenting this appearance, as his master. Steinhauser v. Spraul, 127 Mo. 562; Rietman v. Stolte,

120 Ind. 314; Leary v. Railway, 139 Mass. 580; Marsh v. Chickering, 101 N. Y. 396.  (4)  The testimony in this case disclosed beyond question that there had been a long and successful use of such hammers as plaintiff was using at the time he claims to have been injured, and that such hammers were in general use by all mine operators in the district where he had worked for two years, consequently, there could be no liability on the defendant's behalf, besides the defect which he charges was open and visible to him.  Thompson v. Railway, 140 Mo. 138; Railroad v. Harper, 19 N. E. 31.  (5) Evidence that newer hammers, or those tempered differently from the one in controversy, would be safer, without proving that such ideal hammers were in common use, would not fix any negligence on the defendant. Berning v. Medart, 56 Mo. App. 449.  (6)  The defendant had always conducted its business in the manner it was at the time of the accident, and as appears from the testimony all others engaged in the same business had been using boulder hammers as long as they were heavy enough to break rock and no similar accident had occurred from the use of an old hammer within the memory of any witness, therefore, since an infinitely small piece flew from this hammer and hit plaintiff in the eye it can only be designated as an "accident." Wendall v. Railway, 75 S. W. 689.

*Shannon & Shannon,* for respondent, submitted an argument.

BROADDUS, J.—The plaintiff sues to recover damages sustained by the loss of one of his eyes alleged to have been the result of defendant's negligence while he was in its employ.

The evidence tends to show that defendant was engaged in mining at Oronogo, Jasper county, Missouri, and in cleaning and reducing zinc ores for market; that plaintiff in September, 1902, was in the employ of defendant engaged in feeding what is called a crusher, a

part of said mining plant; that one of plaintiff's duties was to break rock and large pieces of ore before they were put into said crusher, for which purpose he was furnished with a steel hammer; and that while so engaged in breaking a boulder of rock a small piece of the said hammer broke off and projected into his right eye, causing its destruction.   There was also evidence tending to show that said hammer was old and worn and had been reduced in weight while in use more than two pounds; that both plaintiff and the defendant's superintendent knew of its condition; and that said superintendent had promised plaintiff to supply its place with a new one, but had failed to do so.   The objection plaintiff made to the hammer was that it was too light.   The hammer was produced and exhibited to the jury and it appeared that around its face it was broken and slivered and there were indentations where many pieces had broken out of the edge.   Frank Gear, a witness for plaintiff, and who was an engineer and blacksmith, testified that, the hammer in question was worn and also that the edges would "break loose and fly."

The general tendency of the testimony on both sides was to the effect that all hammers of the kind in question would wear away and break off in small pieces by use, some more than others.   It depending on how they were tempered.   Some of the witnesses for defendant testified that they preferred an old worn hammer to a new one.   It also appeared that hammers were often used in the business until they were much worn and reduced in weight.

The jury returned a verdict in plaintiff's favor for $500.   None of the instructions are preserved in the record and the only question presented by appellant is that the court erred in refusing defendant's demurrer to plaintiff's evidence.

The contention of defendant is, that as it furnished an instrument with which to perform his labor that was

ordinarily used for like purposes by persons engaged in the same kind of business, it was not liable to the plaintiff for his injury. In Minnier v. Railway, 167 Mo. 120, the rule is stated to be: ''No inference of negligence can arise from evidence which shows that the instrument used was such as is ordinarily used for like purposes by persons engaged in the same kind of business.'' Such is the general rule adopted in this State. But the question does not arise in this case and consequently can have no application. The evidence did not show that the hammer in question was such as was in general use by miners engaged in a like business, nor that such was in general use by the defendants. But it did show, as stated, that hammers much worn were in common use. But the question here was, whether the hammer in controversy had been used to such an extent as to render it most reasonably safe. It would have been impossible to show, and it was not attempted, that such hammers were all in the same condition, brought about by use. The chances were that they would differ in their conditions in that respect by degrees—some more and some less. The testimony was rather to the effect that such defective hammers, though frequently used, constituted an exception to the general custom. And as the defects of each particular hammer must have differed, as stated, in degree from every other one, there did not exist a standard from which a custom could have been inferred.

It is well settled law that, ''The servant in entering the service of his master assumes the risks that ordinarily and usually are incident to the business being conducted by the master.'' But it is also well settled that, the master is bound to furnish his servant with reasonably safe instrumentalities with which to do his work. The contention here is, that the plaintiff knew the defects of the hammer and therefore he is not entitled to recover. But the rule is that ''if the servant knows, or by the exercise of ordinary care could know,

that the appliances furnished are not altogether safe, he is not obliged to refuse to use them or quit the service, if he reasonably believes that by the exercise of proper care and caution he can safely use them, notwithstanding they are not reasonably safe; and if he does use them and exercise such care and caution and is injured, he does not waive his right to compensation for injuries in consequence, nor is he guilty of contributory negligence." Minnier v. Railway, supra. And as it does not appear that the defects were so glaring as to threaten immediate danger, nor of such a character as that a person of ordinary prudence would not have used the implement in question, plaintiff was not precluded from recovery on the ground that he had been guilty of contributory negligence. Booth v. Railway, 76 Mo. App. 516.

The question is, not what would be a safe hammer, but, what would constitute one that was reasonably safe? Nor, whether it would be unsafe because it had been used for a considerable length of time, but, whether from long use it had become unfit to be longer used in the exercise of care and caution? There can be no doubt but what the continued application with great force of a steel hammer upon a hard substance like rock, whether the metal be properly tempered or not, will eventually cause disintegration of the metal. This is a fact well known and defendant must be held to such knowledge. That defendant knew the condition of the hammer in question there can be no doubt, and it therefore became a question for the jury whether under all the evidence it was reasonably safe to be used by the exercise of due care.

Cause affirmed. All concur.