DENKER, Appellant, v. WOLFF MILLING COMPANY, Respondent.

St. Louis Court of Appeals, January 26, 1909.

1. **MASTER AND SERVANT:** Safe Appliances: Assumption of Risk. Where an employee of a milling company was directed by his employer to paint a smoke stack and while so engaged was obliged to sit upon a swinging seat suspended by a rope attached to the top of the smokestack, it was the duty of the company to exercise reasonable care to furnish a rope strong

enough so that he would not be exposed to more than ordinary peril while at such work, and such employee did not assume the enhanced risk due to the omission of such reasonable care by his employer.

2. ————: ————: Inspection. In such case, where it was shown that the rope furnished had been used for nineteen years for various purposes, it was the duty of the company to test it and ascertain that it was safe before furnishing it for the employee.

3. ————: ————: ————: Duty of Servant to Inspect. In such case, if the employee using the rope was charged with the duty of testing it, he could not recover for an injury received by its being unfit and breaking with his weight, but the burden was upon the employer to prove such defense when sued for injuries received by the employee under the circumstances, where it was shown that the weakness of the rope was not discernable from a casual inspection such as the servant might have made in passing it through his hand, but that it was weak from age and use in a manner not externally visible.

Appeal from Franklin Circuit Court.—*Hon. R. S. Ryors*, Judge.

REVERSED AND REMANDED.

*J. H. Schnaper* and *John W. Booth* for appellant.

*O. E. Meyerseick* and *James Booth* for respondent.

GOODE, J.—Appellant was hurt in a fall from a swinging seat while engaged in painting the metal chimney or smokestack of respondent's mill. The chimney rose forty feet or more above the roof of the engine house of the mill. Appellant had been engineer there since 1898 and as such it was his duty to paint the stack, which he did two or three times a year. An iron hook in the shape of a letter "S," five-eighths of an inch in diameter hung from the top of the stack. Appellant made use of a rope with blocks and tackle to get to the upper part of the stack. A small rope hung from the hook to which was fastened the large rope

used to support appellant, and one end of the large rope would be drawn upward by pulling the small one until the former hung over the iron hook. A loop or seat was in the other end of the large rope where appellant would sit and be hoisted by another employee pulling on a third rope which hung from the upper of the two blocks in the large rope. On March 18, 1901, in obedience to the command of the general manager of the Milling Company, appellant set about painting the stack. The employee who was to help him was a negro named Rose. Rose procured the hope to be used in hoisting appellant and after it was fastened to the hook above, drew appellant to the top of the stack where he painted for awhile, when the rope which supported him broke about eighteen inches below the hook, letting him drop to the roof of the engine house. His right ankle was so badly fractured the foot had to be amputated. The present action was instituted to obtain compensation for the injury, the averment being that respondent was negligent in not using care to provide a good rope for appellant's use or ascertain if the one furnished was strong enough to be used in said work with reasonable safety. At the time of the accident appellant had been in the service of the milling company for nineteen years and the rope that broke was in use when he went there. It was a manila rope an inch or an inch and a quarter in diameter and was used for other purposes than to support an employee when painting the smokestack, but had always been used by appellant for said purpose during the three years he had painted the stack. As said, on the day of the accident it was brought to appellant by Rose, the servant who was to assist in the operation, but where or from whom Rose obtained it is unproved. Before drawing it over the hook appellant ran part or all of it through his hands to ascertain, as far as he could, if it was sound. He said he always did this with the ends of the rope at least, and sometimes let the entire

length pass through his hands. No proof was made of the rope having been tested at any time to ascertain its condition and whether it remained strong enough to lift plaintiff, or had become weak from wear or decay. Expert ropemakers and men who were accustomed to the use of ropes, testified what would be a proper inspection, and agreed the best test of the strength of a rope was by weights. Other tests were pulling on it and cutting into it to see if it was sound inside. Where the rope in question broke the ends were frayed, or "fuzzy" as a witness said, and the inner strands and filaments were broken into pieces, an inch or so long, which sifted out when the rope was held up. The experts said a rope would get that way inside after long use; the strands or threads of which it was made would become cut up, as it were, into short pieces, weakening it in a way not externally visible. Other ropes were about the mill, but the testimony conduces to prove this was the one always used in painting the stack and the only one suitable for the purpose. Such, in substance, was the testimony for appellant, at the conclusion of which the court directed a verdict to be returned in respondent's favor; which having been done and judgment entered accordingly, this appeal was taken.

It was incumbent on respondent to exercise reasonable care to furnish appellant a rope strong enough to expose him to no more than ordinary peril while painting the smokestack. [Gutredge v. Railroad, 105 Mo. 15, 20.] Appellant assumed no enhancement of the risk due to omission of this duty by respondent. [Curtis v. McNair, 173 Mo. 270; Blundell v. Elevator Co., 189 Mo. 552.] Ordinary care in this regard would vary with circumstances. It might be taken for granted a new rope of the size of the one furnished and showing no faults, was sound and strong enough to bear appellant's weight; but one nineteen years old, and which had been used for various purposes around the mill, could not be treated as safe as a matter of

course; and the duty of testing it before furnishing it for a dangerous operation was respondent's. [See Butter v. Railroad, 95 Pa. St. 211.] Fair men might infer from the facts in proof that respondent was negligent in respect of its duty to use care to furnish appellant a reasonably safe rope, unless the entire evidence permits no finding except that the duty of testing the rope fell on appellant himself. This duty could be discharged by respondent company only through some officer or employee and might have been left to appellant. If he was charged personally with the task of testing the rope and carelessly omitted to perform the duty, blame for the accident rests on him and he should be denied damages. [Kleine v. Shoe Co., 91 Mo. App. 102.] There is no positive testimony one way or the other on this question. Appellant swore he was in the habit of running part of the rope through his hands before he would entrust his weight to it, but it is not pretended this was an adequate test of its strength. What weight it would support was the essential fact, and some appropriate mode of finding this out should have been employed by the company, either through the agency of appellant, or some other employee. Testimony discloses facts from which negligence on the part of the company might have been found, and if the defense is that appellant was charged with the duty of testing the rope, the company carried the burden of establishing this defense. No certain inference about the matter can be drawn one way or the other from the testimony. Maybe nothing ever was said about subjecting the rope to a test; and, if anything was said, the purport of it was not proved. The weakness of the rope was not obvious and discernible in a casual inspection, such as a servant might be called upon to make before he used it, even though he was not charged with the duty of making tests. The break was due to the condition of the inside threads which had become broken or worn into short pieces. If reasonable tests had been made

and no weakness discovered, or if it was appellant's duty to make them and he did not, respondent would stand exonerated. Neither fact appears beyond inference to the contrary and so the judgment must be reversed and the cause remanded for a retrial. All concur.