## ·SAM HARRIS, Respondent, v. KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant. ·

### St. Louis Court of Appeals, January 18, 1910.

1. **MASTER AND SERVANT: Simple Appliances: Master's Duty.**
The doctrine that it is not the master's duty to use ordinary
care to furnish the servant with reasonably safe appliances,
when both the appliance and the work to be performed there-
with are commonplace, finds no application to work done by a
railroad employee in drawing spikes with a clawbar, a steel
bar five or six feet long, having two prongs to be inserted
under the spike head and which was driven tight thereunder
by means of a maul.

2. ———: **Appliances: Duty of Master.** The duty of a master
to furnish the servant with reasonably safe appliances with
which to perform the services requires the master to exercise
ordinary care to keep such appliances in a reasonably safe
condition; the question of neglect being determined by refer-
ence to the conduct of an ordinarily prudent person under like
circumstances.

3. ———: **Injuries .to Servant: Negligence: Question for Jury.**
Plaintiff, a railroad employee, while drawing spikes with a
clawbar, the prongs of which were so worn that it was given
to slipping away from the spike, threw the weight of his body
across the bar, which slipped, and he fell and was injured.
*Held,* that it was for the jury whether the defective condition
of the prongs and the likelihood of such use of the bar were
such as to bring the resulting injury within the range of
reasonable probabilities an ordinarily prudent employer should
have anticipated

4. ———: **Simple Appliances: Master's Duty.** As a general propo-
sition, the obligation of the master to exercise ordinary care
to furnish reasonably safe appliances is the same in respect
to simple appliances and simple work as in any other, unless
in a case where the appliances and the contemplated use
thereof are so very simple and commonplace that an ordinarily
prudent person would not reasonably anticipate the danger en-
tailed.

5. ———: ———: ———. The question of a master's negligence
in furnishing unsafe appliances for work must be determined
with reference to the dangers to be reasonably apprehended.

6. ———: Injuries to Servant: Contributory Negligence. In an action by a servant against the master for personal injuries, the plaintiff's right of recovery may not be denied because of his contributory negligence as a matter of law, unless the use of the appliance causing his injury in its known condition pointed glaring and imminent danger to his safety.

7. ———: ———: ———: Question for Jury: Facts Stated. Plaintiff, a railroad employee, while drawing spikes with a clawbar, the prongs of which were so worn that it was given to slipping away from the spike and which had slipped or given way one or more times while removing each spike while plaintiff was doing the work, was injured as a result of throwing the weight of his body across the elevated end of the clawbar, with full knowledge of its defective condition, instead of pressing down on it with his hands. *Held*, he was not guilty of contributory negligence as a matter of law.

8. ———: ———: Assumption of Risk. The servant assumes only such risks as are ordinarily incident to the employment and regarded as reasonably within the contemplation of the parties at the time of entering into the contract of hire.

9. NEGLIGENCE: Nature of Law Relating to. The law of negligent torts is not essentially a set of codified rules that may find appropriate application for determination of all cases that arise, but it is a system of principles that seeks to attain a just result in every instance.

10. ———: Contributory Negligence. It is the policy of the law to forbid a recovery by the plaintiff, in an action for personal injuries negligently inflicted, if it appear his own fault either induced or contributed to his hurt.

11. MASTER AND SERVANT: Injuries to Servant: Simple Appliance: Assumption of Risk. Where a servant is injured through the use of a simple appliance, which is defective, in the performance of a simple task, and he knew of the defect and might have avoided the injury by pursuing another mode of operation, almost, if not quite, as convenient and practical, he is precluded from recovering in an action for damages, for the reason he has assumed the risk of such injury.

12. ———: ———: ———: ———: Facts Stated. Plaintiff, a railroad employee, while drawing spikes with a clawbar, the prongs of which were so worn that it was given to slipping away from the spike, was injured by throwing the weight of his body across the elevated end of the clawbar. The clawbar was a simple appliance, and the labor to be performed with it was simple and commonplace. Plaintiff knew and understood the

defective condition of the clawbar, and could have raised the spikes by pushing down on the bar with his hands, instead of throwing the weight of his body across it. *Held*, that in performing this simple work with a simple tool with full knowledge of its defects, and by choosing the more dangerous of the two modes of operation, plaintiff assumed the risk incident to the manner thus voluntarily chosen to perform the service.

13. ———; ———: **Assumption of Risk: Rests Upon Knowledge and Assent.** The entire doctrine of assumption of the risk rests upon the maxim *"volenti non fit injuria"* and involves the idea of both knowledge and assent.

**Dissenting Opinion by Judge Goode.**

14. ———: ———: ———: **Servant Does not Assume Risk of Master's Negligence.** An employee does not assume the risk of defective tools negligently furnished for his use by an employer.

Appeal from Newton Circuit Court.—*Hon. F. C. Johnston*, Judge.

REVERSED AND CERTIFIED TO SUPREME COURT.

*Cyrus Crane* and *O. L. Cravens* for appellant.

(1) When a servant has a choice of two ways of performing his labor, one safe, and the other risky, which latter he voluntarily chooses, such choice is contributory negligence precluding recovery for the resulting injury. Montgomery v. Railroad, 109 Mo. App. 88; Moore v. Railroad, 146 Mo. 572; Smith v. Box Co., 193 Mo. 715; Pauck v. Beef Co., 159 Mo. 639; Holmes v. Brandenbaugh, 172 Mo. 66; Anderson v. Box Co., 103 Mo. App. 382; Sparks v. Railroad, 31 Mo. App. 111; Haviland v. Railroad, 172 Mo. 106; Hurst v. Railroad, 163 Mo. 309; Towner v. Railroad, 52 Mo. App. 648. (2) Even if the clawbar was defective and unsuitable, plaintiff knew such fact, or it was a fact perfectly obvious to his senses, and, having continued its use thereafter, assumed the risk of injury therefrom. 1 Labatt on Master and Serv., sec. 154; 1 Bailey on Per. Inj. Relating to

Master and Serv., sec. 503; Martin v. Highland P. M.
Co., 128 N. C. 265; Webster M. Co. v. Nisbett, 205 Ill.
273; Cregan v. Marston, 126 N. Y. 568; Marsh v. Chickering, 101 N. Y. 396; Relyea v. Tomahawk P. & P. Co.,
110 Wis. 307; Garnett v. Bridge Co., 98 Fed. 192; Railroad v. Minnick, 61 Fed. 635; 20 Am. and Eng. Ency.
Law (2 Ed.), 89; Hefferen v. Railroad, 45 Minn. 471;
Miller v. Railroad, 47 N. Y. Supp. 285; Lynn v. Glucose
Co., 104 N. W. (Ia.) 597; Corcoran v. Gas Co., 81 Wis.
191; Holt v. Railroad, 94 Wis. 596; Borden v. Mill Co.,
98 Wis. 402; Olson v. Lumber Co., 102 Wis. 264; Steinhauser v. Spraul, 127 Mo. 541; Post v. Railroad, 121
Mo. App. 562; Meyers v. Glass Co., 107 S. W. 1041;
Anderson v. Box Co., 103 Mo. App. 302; Bohn v. Railroad, 106 Mo. 429; Nicholds v. Plate Glass Co., 126 Mo.
55; Berning v. Medart, 56 Mo. App. 443; Devitt v. Railroad, 50 Mo. 302; Harf v. Green, 168 Mo. 308; Covey
v. Railroad, 86 Mo. 635; Hurst v. Railroad, 163 Mo. 309;
Shea v. Railroad, 76 Mo. App. 29; Lucey v. Oil Co., 129
Mo. 32. (3) It was error to allow plaintiff to prove collateral statements and acts contradicting section foreman Cope as to declarations alleged to have been made
by him after the injury to plaintiff, drawn out in cross-examination for the purpose of impeaching him as a
witness, which statements were not part of the *res
gestae,* nor was it shown Cope had any authority from
defendant to make such admissions or perform such
acts. Scharff v. Grossman, 59 Mo. App. 199; Lahort v.
Buchannan, 50 Mo. 201; Manget v. O'Neill, 51 Mo. App.
35; McDermott v. Railroad, 73 Mo. 316; Aldridge v. Company, 78 Mo. 559; Bevis v. Railroad, 26 Mo. App. 19;
Inv. Co. v. Fillingham, 85 Mo. App. 534; Anderson v.
Railroad, 161 Mo. 420; Wojtylak v. Company, 188 Mo.
260; Meyer v. Lewis, 43 Mo. App. 417. (4) Failure
to define the terms "ordinary care" and "negligence," as
used in plaintiff's first and fourth instructions, is error.
Hovarka v. Transit Co., 191 Mo. 441. (5) Plaintiff's
fourth instruction makes defendant an insurer. Ben-

nett v. Lumber Co., 116 Mo. App. 699; Dunn v. Nicholson, 117 Mo. App. 374.

*Benton & Ruark* for respondent.

(1)   That the master's duty is to furnish his servant with reasonably safe tools and appliances with which to do his work and to use reasonable care to keep such tools and appliances in a safe condition has been so often ruled by the appellate courts as to become axiomatic.   Huth v. Dohle, 76 Mo. App. 671; Lee v. Railroad, 112 Mo. App. 372; Curtis v. McNair, 173 Mo. 270; Franklin v. Railroad, 97 Mo. App. 473; Bohn v. Railroad, 106 Mo. 429; Huth v. Dohle, 76 Mo. App. 671; Beard v. Car Co., 72 Mo. App. 583; Siela v. Railroad, 82 Mo. 430; Porter v. Railroad, 60 Mo. 160; Covey v. Railroad, 86 Mo. 641; Fouts v. Swift Co., 113 Mo. App. 526.   (2)   The servant does not assume the risk arising from the master furnishing defective tools and appliances, though the use of such tools may raise a question of contributory negligence upon the part of the servant.   Graci v. Construction Co., 121 Mo. App. 709; Koerner v. Car Co., 107 S. W. Rep. 481; Brady v. Railroad, 206 Mo. 509; Smith v. Kansas City, 125 Mo. App. 150; Cole v. Transit Co., 193 Mo. 81; Pauck v. Dressed Beef Co., 159 Mo. 467; Zeis v. Brewing Assn., 205 Mo. 638; Kirby v. Coal & Coke Co., 106 S. W. Rep. 1069; Huston v. Railroad, 107 S. W. 1045.   And unless the danger is so threatening and glaring the matter of the defendant's contributory negligence is always for the jury.   Graci v. Construction Co., 124 Mo. App. 719; Pippen v. Railroad, 196 Mo. 321; Obermeyer v. Chair Co., 120 Mo. App. 59; Charlton v. Ry. Co., 200 Mo. 413; Butz v. Construction Co., 199 Mo. 279; Daken v. Chase & Son, 197 Mo. 238; Lee v. Railway, 195 Mo. 400; Sheperd v. Transit Co., 189 Mo. 362; Warren v. Railroad, 113 Mo. App. 498; Kielty v. Construction Co., 121 Mo. App. 58; Clippard v. Transit Co., 202 Mo. 432; Solder

v. Railroad, 100 Mo. 673; Rogers v. Rundell, 106 S. W.
Rep. 1096. And in order to defeat recovery the servant
must know and appreciate the danger. Parsons v.
Packing Co., 96 Mo. App. 372; Studenroth v. Packing
Co., 106 Mo. App. 480. The fact that the work is done
in the presence of and under the immediate direction of
the master's foreman is equivalent to an assurance that
the servant may safely proceed with it; he is not bound
in such case to search for danger, but may rely for his
safety upon the judgment and conduct of the foreman.
Smith v. Kansas City, 125 Mo. App. 157; Herdler v.
Stove & Range Co., 136 Mo. 3; Sullivan v. Railroad,
107 Mo. 66. (3) The question of plaintiff's contribu-
tory negligence must be determined from a "view of the
whole evidence in the most favorable aspect it presents
in behalf of plaintiff." Myers v. Transit Co., 99 Mo.
App. 369; Rogers v. Printing Co., 103 Mo. App. 683.
Where ordinarily there is no danger in the servant
adopting one of two ways he cannot be held negligent
in so doing. Benedict v. Railroad, 104 Mo. App. 218. (4)
It was proper to impeach defendant's witness, Cope,
by proving that he had made statements at variance
with his testimony. Schlomer v. Transit Co., 204 Mo.
99; Harness v. Transit Co., 102 Mo. App. 216. (5) The
doctrine of non-liability where the master furnishes a
defective tool or appliance, that is simple and easily
understood, has never obtained in Missouri. Warner
v. Railroad, 62 Mo. App. 184; Huth v. Dohle, 74 Mo.
App. 671; Beard v. Car Co., 72 Mo. App. 671; Reeder
v. Zinc Co., 107 S. W. Rep. 1016; Duerst v. Stamping
Co., 163 Mo. 607; Roberts v. Mining Co., 105 Mo. App.
78; Franklin v. Railroad, 97 Mo. App. 473; Conroy v.
Iron Works, 62 Mo. 35; McGowan v. Railroad, 61 Mo.
528; Browning v. Railroad, 118 Mo. App. 449. (6)
Both plaintiff and defendant used the terms "ordinary
care" in their instruction, without definition, and plain-
tiff's instruction contained the word "negligence." If

146 App.—34

defendant had desired these terms defined it was his duty to have asked an instruction defining them. "Mere non-direction is not error." Muehlhausen v. Railroad, 91 Mo. 332; Priesmeyer v. Transit Co., 102 Mo. App. 518; Ilges v. Transit Co., 102 Mo. App. 529; Willingham v. Transit Co., 102 Mo. App. 573; Warder v. Henry, 117 Mo. 545; Kischman v. Scott, 166 Mo. 214; Browning v. Railroad, 124 Mo. 55; Bratton v. Railroad, 120 Mo. App. 270.

NORTONI, J.—This is an action for damages accrued to the plaintiff on account of personal injuries received through defendant's alleged negligence in furnishing him a defective clawbar with which to perform his labors as a section hand. The plaintiff recovered and defendant prosecutes the appeal.

The evidence tended to prove that plaintiff was a farmer of mature years and had recently entered the defendant's employ as a laborer upon a section of its railroad. He had been engaged at work on the section about four or five days before his injury. It appears plaintiff had never used a clawbar before the occasion of his injury, and even though such instruments were frequently used by his associates on the section, he said he was entirely unfamiliar therewith. The defendant's section foreman instructed the plaintiff and his companion to proceed to pull spikes from a pile of ties lying by the roadside, and furnished them with the defective clawbar for the purpose. A clawbar is an iron or steel instrument, about five or six feet in length, having two prongs, to be inserted beneath the spike head. The heel of the bar, on which rests the lift, is immediately underneath the turn of the prongs. The clawbar is operated by inserting the prongs beneath the spike head and bearing down on the elevated end of the bar which results in lifting the spike from the ties. The clawbar with which the plaintiff was instructed to work was defective in that the heel thereof was worn and the prongs for

insertion under the spike head on either side of the spike were battered and worn to such an extent that it was impossible to remove the spike therewith unless the bar was first driven under the spike head with a maul, and even then, it was likely to, and did frequently, give way or slip. In other words, the prongs or claws of the bar were so battered and worn that they would not adhere to the spike during the time required in the operation of lifting it from its place in the tie. It appears the plaintiff and his companion had been using the bar about thirty minutes when his injury occurred. The mode of operation was for the plaintiff to insert the prongs of the bar beneath the spike head and hold the same while his companion drove it tight thereunder with a maul, whereupon plaintiff would bear down upon the elevated end of the bar and lift the spike. Plaintiff and his companion alternated in this operation. They had pulled not to exceed ten spikes when the plaintiff was injured. In the operation of removing each spike, the bar had slipped or given away one or more times. Plaintiff received his injury in this manner: His companion drove the clawbar tight under the spike head and plaintiff threw the weight of his body across the elevated end of the bar in the act of bearing down thereon when, because of the battered condition of the prongs, the bar slipped from under the spike head, causing him to fall. As a result of the fall, plaintiff's knee came in contact with a spike in one of the other ties, which inflicted a severe and painful injury.

It is argued by defendant that inasmuch as the clawbar was a simple appliance and the mode and manner of its use a simple operation, there was no breach of duty on the part of the master in furnishing the same, that is to say, it is suggested that the obligation to exercise ordinary care to the end of furnishing reasonably safe appliances does not obtain when both the appliance and the work to be performed therewith are simple and commonplace. There may be, and no doubt

are, cases properly ruled, on the doctrine asserted, but we are not persuaded that it should find application here. The rule obtains generally, we believe, throughout the law of master and servant, that it is the duty of the master to furnish the servant with a reasonably safe appliance with which to perform the services contemplated in the employment. And this duty continues to obtain to the end that the master shall exercise ordinary care toward keeping such appliances in a reasonably safe condition for the purposes intended. The question of neglect in respect of such matters is to be determined by reference to the conduct of an ordinarily prudent person under like circumstances. That is to say, omissions which entail injuries such as might have been foreseen or anticipated by a reasonably prudent person as within the range of reasonable probabilities, are regarded as negligent breaches of duty in respect of the obligation referred to. The typical prudent man, whose conduct furnishes a standard to which a master is bound to conform, is supposed to exercise a proper degree of care, not merely in observing existing conditions, but also in forecasting future occurrences. See Labatt on Master and Servant, sec. 140; see also secs. 141, 142; Gibson v. Pacific R. R. Co., 46 Mo. 163; Anderson v. Forrester, etc., Box Co., 103 Mo. App. 382, 77 S. W. 486; as to the general proposition, see also Fuchs v. St. Louis, 167 Mo. 620, 67 S. W. 610; American Brewing Association v. Talbot, 141 Mo. 674, 42 S. W. 679; Pollock on Torts, 36; Loehring v. Construction Co., 118 Mo. App. 163, 94 S. W. 747.

It is conceded the clawbar was defective in that the prongs for insertion under the spike head were so battered and worn as to render it an inefficient instrument; that is to say, because of the defective prongs and the worn condition of the heel of the bar, on which rested the lift, it was given to slipping away from the spike when pressure was applied as was necessary in the process of extracting the spike from the tie. The appli-

ance being such a simple affair and the work to be performed therewith commonplace in its character, it may be, that an ordinarily prudent person would not anticipate that an injury might follow a careful use of the bar in the ordinary way by pressing down thereon with the hands. The ordinary and usual manner to use the claw-bar for extracting spikes is to insert the prongs under the spike head and bear own on the bar with the hands, but men frequently perform the task identically as this plaintiff attempted to do when he fell and received the injury complained of; that is, men engaged at such work quite frequently throw the weight of the body across the elevated portion of the bar to the end of lifting a spike which is stubborn or difficult of dislodgment. This is such an ordinary method to pursue in the use of the bar that the defendant must have known the bar in question would likely be so employed. At any rate it was for the jury to say whether or not the defective condition of the prongs and the likelihood of the use of the bar as indicated were such as to array the resulting injury to plaintiff within the range of reasonable probabilities an ordinarily prudent employer should have foreseen or anticipated. This being true, the case discloses negligence on the part of the defendant in furnishing such a defective bar and this is true even though the appliance was a simple one and the work for which it was furnished, commonplace.

We decline to accept as true the general proposition that the law does not require the master to exercise ordinary care in furnishing a simple appliance for a simple use, although there may be exceptions to the rule. In Warner v. C., R. I. & P. Ry. Co., 62 Mo. App. 184, the Kansas City Court of Appeals expressly denied the doctrine asserted and said that it knew of no principle of law which holds the master to the obligation to provide reasonably safe machinery and appliances where they are dangerous and complex in their nature and at the same time exempts him from such duty when

the appliances are simple in construction. However, in a subsequent case, Anderson v. Forrester, etc., Box Co., 103 Mo. App. 382, the same court gave judgment to the effect that the furnishing of an ordinary, although defective, nail, by the master to a carpenter from which an injury ensued, when driving it, was not sufficient on which to predicate a negligent breach of duty against the master. It is said in that case that a nail is such a common and simple appliance that an ordinarily prudent man would not anticipate danger in furnishing the same to a carpenter for use in nailing lumber. On that score, it was affirmed that no negligent breach of duty, in respect of the master's obligation to furnish a reasonably safe appliance for the purpose, appeared. The doctrine of that case is certainly sound. Both the appliance, the nail, and the use contemplated were very simple and very commonplace. Although the nail was defective and it was in the range of probabilities that the defect might occasion an injury, it seems that no ordinarily prudent man would anticipate danger in furnishing a carpenter with such a simple appliance for such a common purpose. The point is, although the result was probable, it was not a reasonable probability to be forecasted. See also Post v. C., B. & Q. R. Co., 121 Mo. App. 562, 97 S. W. 233.

The case of Blundell v. Miller Elevator Mfg. Co., 189 Mo. 552, 88 S. W. 103, is relied upon by the defendant as supporting the doctrine that there can be no negligence affirmed on the part of the master for furnishing a defective, simple appliance to be used for a simple purpose. The case referred to is not authority for the proposition stated. In that case, the plaintiff received his injury from the slipping of a ladder on the granitoid floor of a basement while he was engaged on the ladder in constructing an elevator. There is much said in the opinion with respect to simple appliances employed for simple purposes, etc. The case was finally determined, however, upon the relevant proposition of

fact that the defendant had not furnished the ladder for the plaintiff's use at all. It appeared that the plaintiff had picked the ladder out himself and that it had not been furnished by the defendant. The court said the "plaintiff therefore has failed absolutely to show that the ladder was one of the appliances which the defendant furnished." In further discussing the case, however, the court said, assuming that the ladder was furnished by the defendant, the failure to provide spikes or hooks to keep it from slipping was not sufficient to render the defendant liable, as the ladder was a simple appliance and one that was familiar to every grown man. The ladder appeared to be without a defect and the only complaint was that it was without spikes on the bottom to hold it from slipping. The court declared the ladder to be like others in common use and said:

"There is a total absence of any evidence in this case showing that the ladder furnished was not a reasonably safe appliance and could not have been safely used for the purposes to which it was applied or intended to be applied."

So, instead of the case establishing the doctrine that there can be no negligence on the part of the master in furnishing a defective simple appliance for a simple use, it appears to have acquitted the defendant of liability on the ground that there was no negligence shown for the reasons, first, that the defendant did not furnish the ladder at all, and second, that if it did furnish it, the ladder was reasonably safe for the purpose intended. That is to say, that the ladder was in no respect defective and that therefore the obligation to furnish a reasonably safe appliance was fully met and discharged. We, therefore, feel that, as a general proposition, the obligation of the master to exercise ordinary care to the end of furnishing reasonably safe appliances to be employed in a given work obtains the same in respect to simple appliances and simple work as in any other, unless it be in a case where the appliance and

the contemplated use thereof are so very simple and commonplace that an ordinarily prudent person would not reasonably anticipate the danger entailed.  Indeed, no one can doubt the general proposition that in every case the question of negligence, that is, the presence or absence of ordinary care, must be determined with reference to the dangers to be reasonably apprehended. [Bowen v. C., B. & K. C. Ry. Co., 95 Mo. 268, 8 S. W. 230.]

There are numerous cases in this State where the facts having precluded the master's escape on the grounds of contributory negligence or assumed risk, liability has been affirmed as for a negligent breach of duty in respect of furnishing a reasonably safe, simple appliance for a simple purpose.  See the following: Duerst v. St. Louis Stamping Co., 163 Mo. 607, 63 S. W. 827; Robbins v. Mining Co.,  105 Mo. App. 78, 79 S. W. 480; Beard v. American Car Co., 72 Mo. App. 583; Warner v. C., B. & K. C. Ry. Co., 62 Mo. App. 184; Huth v. Dohle, 76 Mo. App. 671; Franklin v. M., K. & T. Ry. Co., 97 Mo. App. 473, 71 S. W. 540.

There are also many cases where the appliance furnished is simple but the work complicated or dangerous. Those cases will not be noticed as they are not pertinent at this time to the question in judgment.

Mr. Labatt says, if liability is to be escaped on the circumstances of a defective, simple appliance furnished for a simple use, it is preferable and more scientific to predicate the master's freedom from liability upon the obvious character of the danger and the servant's presumed acceptance of the risk or capacity for protecting himself in working with the defective appliance.  [See Labatt, Master and Servant, 143.]

Notwithstanding the doctrine of our law to the effect that the obligation to exercise ordinary care for the safety of the servant obtains generally with respect to the furnishing of simple appliances for the performance of contemplated labor, we believe there is a dis-

tinct doctrine with respect to the risks assumed by the servant, engaged in performing a commonplace work, with a simple appliance, the defect of which is well known to him, when the injury occurs through the mode or manner of using the appliance and it might have been obviated by performing the task in another way. The case made by the proof, it seems, falls within the influence of this doctrine and the right of recovery should be denied for the reason the plaintiff should be regarded as having taken the risk incident to throwing the weight of his body across the elevated end of the bar and thus inducing his injury. It is very true, as argued, that such conduct on the part of the plaintiff in the circumstances of the case is not sufficient to preclude his recovery as a matter of law, on the score of contributory negligence. It is the doctrine with us that the plaintiff's right of recovery may not be denied by the court as a matter of law as for contributory negligence unless the use of the bar in its known condition points glaring and imminent danger to his safety. [Garaci v. Hill-O'Meara Construction Co., 124 Mo. App. 709, 102 S. W. 594; Blundell v. Miller Elevator Mfg. Co., 189 Mo. 552, 559, 88 S. W. 103.] Even though the plaintiff received his injury as a result of throwing the weight of his body across the elevated end of the clawbar, with full knowledge of its defective condition, instead of pressing down thereon with his hands, we believe his right of recovery ought not to be denied as a matter of law on the ground of contributory negligence, for if a reasonably prudent person might believe that he could perform the act with safety to himself, by using care on his part, then the question of his neglect or care in that behalf should be referred to the jury. [Garaci v. Hill-O'Meara Construction Co., 124 Mo. App. 709, 102 S. W. 594; Huhn v. Mo. Pac. Ry. Co., 92 Mo. 440, 4 S. W. 937; Butz v. Murch Bros. Construction Co., 199 Mo. 279, 97 S. W. 895.] Although the plaintiff received his injury as a result of his more or less careless act, such

act was not so obviously dangerous as to threaten immediate and imminent peril.

It may be conceded, too, that plaintiff's right of recovery is not precluded as a matter of law by the general doctrine which obtains with us as to assumed risks, if we are to accept the full significance of language employed in some of the opinions as the rule in every case. It is no doubt true that in many cases involving complicated machinery, complex mechanisms and situations which inhere with dangers of considerable proportions the servant is held not to assume such risks even though the servant is held not to assume such risks, even though state of the law, if such defects threaten imminent peril, they are generally referred for determination to the rule touching contributory negligence instead of to that concerning assumed risk.

Under modern decisions in this State, the substance of the rule touching the risk assumed in the circumstances last above referred to is that the servant assumes only such risks as are ordinarily incident to the employment and regarded as reasonably within the contemplation of the parties at the time of entering into the contract of hire. Indeed, the language employed in these cases indicates that in no circumstances may the servant be declared to have assumed a risk resulting from the negligence of the master. [See Curtis v. McNair, 173 Mo. 270, 73 S. W. 167; Pauck v. St. Louis Dressed Beef Co., 159 Mo. 467, 61 S. W. 806; Wendler v. People's House Furnishing Co., 165 Mo. 527, 65 S. W. 737; Blundell v. Miller Elevator Mfg. Co., 189 Mo. 552, 88 S. W. 103; Dakan v. Chase & Son M'fg. Co., 197 Mo. 238, 94 S. W. 944.] Be this as it may, there appears to be a number of recent adjudications by our Supreme Court to the contrary even in cases presenting great dangers. It may be stated as a proposition entirely true that the jurisprudence of a state or country is established through the judgments of its courts given upon relevant principles rather than through the words or

phraseology employed by the judges in the opinions. Whatever may be the language employed in other cases, it is certain that numerous recent judgments of our Supreme Court deny recoveries on the ground that the servant assumed the risk from which the injury complained of resulted, and this, too, when it appeared the master was negligent in failing to discharge his whole duty in the premises and the situation presented danger in a high degree. Some of those cases proceed as for a breach of duty on the part of the master in respect of his obligation to exercise ordinary care to furnish the servant a reasonably safe place, and others, as to a reasonably safe appliance. Besides Steinhauser v. Spraul, 127 Mo. 541, 30 S. W. 102; Holloran v. Iron & Foundry Co., 133 Mo. 470, 35 S. W. 260; Mathis v. Kansas City Stock Yards Co., 185 Mo. 434, 84 S. W. 66, touching upon the question of a simple appliance employed in a simple use and for that reason to be hereafter adverted to, there are the cases of Fugler v. Bothe, 117 Mo. 475, 22 S. W. 1113, and Knorpp v. Wagner, 195 Mo. 637, 93 S. W. 961, which, by the judgments given, declare the servant to have assumed the risk when it appears the master was negligent. Indeed, the doctrine of one of those cases (Fugler v. Bothe) is asserted not alone by the judgment of the court to that effect, but by pointed and express words in the opinion as well declaring such risk to have been assumed. There can be no doubt as to the master's negligence in both of those cases. In fact, such seems to be conceded throughout the opinions, and it may be said if proof had failed to disclose negligence on the part of the master, it is to be presumed the court would have predicated its judgment of non-liability on that ground instead of on the ground of assumed risk, as, without negligence, no cause of action existed in the first instance.

Now, let us examine those cases to the end of deducing the principle asserted and acted upon by the court. In Fugler v. Bothe, 117 Mo. 475, 22 S. W. 1113,

the suit predicated on the master's breach of duty in respect of the obligation to exercise ordinary care to furnish the servant a reasonably safe place to work. It appears throughout the case that the master was derelict as to this duty and that he had not only failed to provide such but had restrained plaintiff's husband and his companion from rendering the place reasonably safe for themselves by forbidding them to erect a scaffold. As a result, the plaintiff's husband, while performing the work of a carpenter, fell from his insecure position on a gutter to his death. The court conceded the defendant's negligence and declared that as the danger was known to the deceased and his death resulted *from the mode and manner he conducted himself upon or used the defective place, he assumed the risk incident to such mode and manner of use*. In principle the more recent case of Holloran v. Union Iron & Foundry Co., 133 Mo. 470, 478, S. W. 260, is identical with the last cited, for although it concedes the fault of the master, the servant is declared to have assumed the risk incident to the mode and manner of use or the mode and manner in which he conducted himself in performing the task. In that case, the thought is expressed by the court in the following language: "The manner of handling himself was under his own control."

In the more recent case of Knorpp v. Wagner, 195 Mo. 627, 93 S. W. 961, it was the plaintiff's duty to drill holes for, and explode blasts in, a ledge of ore, the face of which was sixty feet in length, in a mine. Although several specifications of fault on the part of the defendant were rejected, it is conceded in the opinion that the master was shown to have been negligent in ordering plaintiff to perform the highly dangerous task of drilling across an old hole in which was lodged a quantity of unexploded dynamite and that this negligent order involved an assurance of reasonable safety to him while so engaged. As a result of performing the work enjoined by the negligent order, partly as directed and

partly in accordance with his own discretion, the dynamite lodged in the old drill hole was exploded by the contact of his drill, and plaintiff was injured. It is true, the court said on these facts, plaintiff could have relied upon the assurances of safety from the master and that in proceeding in part on his own judgment and in part on that of the master there was a "concurrence" of "negligent judgments" of both plaintiff and defendant which rendered the injury not actionable. However, notwithstanding this, a study of the succeeding portions of the opinion reveals as well that plaintiff was thought to have assumed the risk because he exercised *his own discretion in part as to how and when to drill.* The thought to be gleaned from the concluding pages of that opinion and the judgment of the court clearly portrays the doctrine of assumed risk predicated upon the facts that plaintiff, knowing the defect and danger, prosecuted the work of drilling into the dynamite in a mode and manner chosen, in part at least, by himself. In concluding, the court said in substance that plaintiff could have worked elsewhere on the face of the sixty-foot ledge of ore during the day and could have exploded the old hole, in which was lodged the dynamite, at the close of the day's work had he elected so to do, but instead he exercised his own judgment, made his own inspection, and drilled the hole substantially in a spot to suit himself, with full knowledge of the fact that there was a quantity of unexploded dynamite contained in the old hole near which he was boring, and in these circumstances he was not entitled to recover. Although the words assumed risk are not used in this portion of the opinion, the doctrine reveals itself to have been the ruling thought in the mind of the court. It is true these cases, instead of dealing with injuries resulting from the simple use of a simple appliance, declare the doctrine on facts presenting a situation which inhered with dangers in a high degree, and it may be that the court has receded from this position in such circumstances as in

other more recent opinions delivered in cases presenting dangerous situations it is asserted that the servant never assumes the risk which may arise as a result of the master's negligence. Although such is the rule in this State generally speaking, it is not entirely clear that the Supreme Court would decline to declare the doctrine of assumed risk again even on facts presenting a highly dangerous situation, if its application were essential to attain the ends of justice. Suppose a servant, engaged in work which even inheres with considerable hazard, possessing full knowledge of the defect in the place or appliance and understanding the dangers, is injured as a result of the *way* in which he *voluntarily uses* the defective place or appliance under circumstances indicating conclusively that his injury would have been avoided entirely by the slightest circumspection on his part to the end of performing the task in another and safe way. In such circumstances, it is clear the fault lies with the injured party who voluntarily chose the dangerous mode or manner of use, for though the master is negligent, his negligence becomes remote in the chain of causation and the voluntary act of the servant is the proximate cause of the injury. Upon the precise question being presented to that tribunal for judgment, we apprehend that in order to fulfill its high mission of awarding exact justice, the Supreme Court will declare the servant, who thus conclusively appears to have induced his injury, to have assumed the risk incident to his voluntary act. A ruling to the contrary will essentially abrogate the principle of the recent cases of Fugler v. Bothe, 117 Mo. 475, 22 S. W. 1113; Holloran v. Union Iron & Foundry Co., 133 Mo. 470, 35 S. W. 260; and Knorpp v. Wagner, 195 Mo. 541, 93 S. W. 961; besides Steinhauser v. Spraul, 127 Mo. 541, 30 S. W. 102, and Mathis v. Kansas City Stock Yards Co., 185 Mo. 434, 84 S. W. 66, which distinctively deal with a simple appliance furnished for a simple use. However this may be, we all know the law of negligent torts is

not essentially a set of codified rules which may find appropriate application for determination of any and all cases that arise, but it is a system of principles which seeks to attain a just result in every instance. Fundamental to the entire doctrine which awards compensation for negligent injuries is the principle which inhibits the recovery from one person for an injury inflicted upon another by his own fault. That is to say, it is the policy of the law to forbid a recovery by the plaintiff if it appears that his own fault either induced or contributed to the hurt. Now, in keeping with this principle there seems to be a distinct doctrine of the law touching the matter of assumed risk which denies a recovery to a plaintiff injured through the use of a defective, simple appliance in the performance of a simple task if it appears he knew of the defect and might have avoided the injury by pursuing another mode of operation, almost, if not quite, as convenient and practical. In such cases the principle which precludes a recovery on the theory of assumed risk is especially appropriate for the reason the danger involved seldom, if ever, resides in either the appliance to be used or the work to be performed but inheres rather in the mode and manner the appliance is used instead. No one can doubt that in almost every case common labor may be performed in a simple manner and with safety, through the use of a simple appliance, even though defective, if only slight discretion is exercised on the part of the person performing the task. Then, too, it is to be remembered that when an appliance may be used in either a safe or a dangerous way and the servant chooses the unsafe instead of the safe way to proceed, it is the servant and not the master, who, through the voluntary action of his own senses, directs the movement resulting in his hurt. We believe these suggestions to be peculiarly pertinent to the use of a simple tool for a simple purpose. It is obvious where the use of a simple appliance in the performance of commonplace labor is involved, and an in-

jury results, that the circumstances will seldom present a case where the recovery should be denied as a matter of law on the score of contributory negligence, for to deny a recovery on this ground involves the idea that the danger must be imminent and threatening. Such dangers, as a rule, do not inhere in such simple appliances and commonplace labor and, therefore, if the doctrine of contributory negligence alone were to be reckoned with, recoveries would frequently be allowed, violative of the principle prescribing such, when the loss accrues through the fault of the injured party. And then, too, not infrequently, injuries occur through the use of defective, simple appliances in the performance of simple labor, which are, in fact, induced by the act of the servant in using the defective appliance, with full knowledge of the defect, in an unsafe manner when he might have chosen the safe course instead, and the circumstances are such as to preclude the idea that the risk is one ordinarily incident to the employment. A recovery in instances of this character may not be precluded by the general rule as to the assumed risk which obtains in Missouri if we are to accept the full meaning of broad language used in the opinions as the rule, for the reason, as thus formulated, the rule seems to be inadequate to meet the ends of precise justice in every case. It is certain that to allow a recovery in such cases is violative of the fundamental principle, heretofore referred to, which, like the polar star, points the true course for awarding or denying compensation under the law of negligent torts. In keeping with this thought, the Supreme Court denied the right of recovery in Steinhauser v. Spraul, 127 Mo. 541, 30 S. W. 102, and predicated its action in that regard on the proposition that the plaintiff had assumed the risk. In that case, the negligence relied upon for recovery was that the defendant had furnished the plaintiff a defective ladder for the purpose of ascending into the loft of a barn to catch some pigeons to be used at table. The ladder was

otherwise reasonably safe, except it was too long for the purpose intended, and the defect complained of was its unusual length. It is conceded throughout the case that the ladder was defective for the purpose furnished but it is said that it was a simple appliance furnished for a very simple use and, it appearing that the plaintiff knew and understood the defect and that the injury resulted from the manner in which plaintiff used it, she must be regarded as having taken the risk incident to such use. In that case, Judge BARCLAY said:

"The only danger to plaintiff arose from the mode and manner of its use; and the mode and manner of using it, on the occasion in question, were within plaintiff's own control. She had used it with safety before, and, undoubtedly, knew as much about its use for such purposes as did the defendant.

"In my opinion plaintiff cannot recover for an injury arising from the manner in which she saw fit to place the ladder in executing the order of defendant to get the pigeons."

In Holloran v. Union Iron & Foundry Co., 133 Mo. 470, 35 S. W. 260, the plaintiff was injured by falling from the second story of the building while engaged in assisting his co-employees in moving an upright derrick on loose planks laid for that purpose across the uncovered iron girders of the floor. The plaintiff's complaint was that the defendant had not furnished enough planks for the purpose. Among other things, the court said, substantially, the appliances to move the derrick and the work being performed were simple and well understood by the plaintiff; he knew better than anyone else whether he could handle himself safely in the position he assumed to aid in the work. And as he slipped and fell while aiding in the performance of such commonplace work, with such simple appliances, he must be regarded as having taken the risk incident thereto. To the same effect, see Lucey v. Hannibal Oil Co., 129 Mo.

146 App.—35

32, 31 S. W. 340. In the more recent case of Mathis v. Kansas City Stock Yards Co., 185 Mo. 434, 84 S. W. 66, the Supreme Court In Banc ruled the case in judgment on the same doctrine and adjudged the servant to have assumed the risk incident to the use of a defective appliance employed for the purpose of a scaffold in an engine room. In that case, the plaintiff was an engineer in the defendant's employ. He was furnished a simple board or plank to be laid across parts of the machinery for the purpose of rendering him a support or scaffold to stand upon while engaged in turning or adjusting the governor of the engine that regulated certain steam pumps. The board when in position rested upon an uneven surface and was liable to tip or tilt, as it did. The arrangement, the board and uneven surface together, completed the appliance which was unsafe and plaintiff knew of the defect. Plaintiff was injured by the board tipping and precipitating his fall. The case was ruled on the doctrine that the appliance was a simple one and used for a simple purpose. It appearing that the plaintiff had full knowledge of the defect and that he received his injury through the manner in which he adjusted or used the appliance, he assumed the risk incident to such use. These cases are controlling authorities. An application of the principle they announce and portray to the facts in judgment here, compels us to declare that the plaintiff assumed the risk of injury under the circumstances of his hurt. The relevant facts calling for an application of the doctrine are that the clawbar furnished, although defective, was a simple appliance well known and understood by any one who had worked with it for thirty minutes, or, for that matter, to any one who had seen it and used it a single time. The labor to be performed therewith was simple and commonplace as well, even though it was being performed upon a railroad. The plaintiff knew and understood the defective condition of the clawbar, for he testified that it had slipped one or more times from

under the spike head every time he had used it, which, in all, was about ten times, immediately preceding his injury. It appears from his testimony that the only way in which it could be made to perform at all was to drive it under the spike head with a maul, as they did in every instance. It appears, too, to be uncontroverted that it was possible to raise the spikes by means of pushing down on the bar with the hands and that it was not absolutely necessary to throw the weight of one's body across it for that purpose. In performing this simple work, with a simple tool, and with full knowledge of the defect in the bar, the plaintiff saw fit to choose the more dangerous of the two modes of operation by throwing the weight of his body across the bar which occasioned the injury. Under these circumstances, he should be ruled to have assumed the risk incident to the mode and manner thus voluntarily chosen to perform the service.

It is argued by the plaintiff that numerous judgments, appearing in our reports, indicate that liability has been affirmed frequently on account of defective, simple appliances and no reference has been made to the effect that plaintiff assumed the risk incident thereto. This is very true, indeed, but it will be discovered on referring to those cases that while the particular appliance involved may have been simple, the use for which it was furnished and in which it was being employed was one which inhered with more or less danger. This fact presents an additional element to repulse the operation of the principle which invokes the doctrine precluding a recovery as a matter of law on the ground of assumed risk, unless it appears the servant adopted a particular mode to use the instrumentality and thus occasioned the injury by his voluntary act, when it could have been avoided by the exercise of discretion on his part. *The element referred to is not present here. In the case now in judgment, the appliance, although defective, was a simple one, the labor to be performed*

*therewith was simple, and the danger, instead of inhering in either the appliance or the work, arose rather from the manner in which the plaintiff saw fit to use the clawbar, when by exercising discretion, he might have used it in a safe way.*

It is said that this court recently affirmed a liability on the use of an appliance as simple as a common rope in Dando v. Home Tel. Co., 140 Mo. App. 511, 120 S. W. 644. Such is very true, but to advert a moment to the facts of that case: There the rope, which is said to be a simple appliance, was used for the purpose of suspending a scaffold to a wire cable propably thirty feet above the ground, and the plaintiff was required to work upon the scaffold thus suspended high in the air while mending another cable. The rope broke and occasioned the injury sued for. It does not appear that the plaintiff knew that the rope was defective. This alone eliminates an essential element for the application of the doctrine of assumed risk. Although the appliance was simple, the use intended and for which it was being employed was highly dangerous and in such circumstances, even if the plaintiff knew the rope was slightly defective, his right of recovery was certainly not precluded on the ground of assumed risk, as for a simple appliance employed in commonplace work. The use for which the rope was intended and employed was neither commonplace nor simple; it was highly dangerous. Now, we believe had this identical rope involved in the Dando case been furnished to the plaintiff for the purpose of drawing a small hand sled with a sack of meal thereon, the result would have been otherwise, that is if plaintiff knew of the defect and understood the danger. Suppose the sled had become caught or its progress impeded by an obstruction in the highway and the plaintiff had thrown his whole weight upon the rope to the end of dislodging the same and thus received an injury, we apprehend it would have been declared that he assumed the risk incident to such a mode of performance

voluntarily chosen by him.  Reeder v. Crystal Carbonate Lime Co., 129 Mo. App. 107, 107 S. W. 1016, is pointed out by the plaintiff also as a case wherein this court recently affirmed a liability on the use of an appliance so simple as a rope.  Upon examining the facts of that case, it appears an immense gin pole, twenty-eight inches at the butt and forty feet in length was being erected by means of a certain block and tackle.  A defective rope was used for the purpose of making this huge pole fast; as the lift increased, the defective rope separated and the plaintiff was injured as a result of the falling of the gin pole.  These facts certainly present no question of simple appliance employed in a simple or commonplace work, but, instead, present a situation which inhered with extraordinary danger.  This element of danger arising from the circumstances and complications mentioned certainly removed the case from the influence of the doctrine of assumed risk which obtains in respect to simple appliances being used for a simple purpose by a servant who is entirely familiar with the defects.  Then, too, the case of Denker v. Wolff Mill. Co., 135 Mo. App. 340, 115 S. W. 1035, relied upon by the plaintiff, is distinguishable in that the use of the rope furnished was pregnant with a high degree of peril and that it did not appear plaintiff was aware of the defect.  The plaintiff was engaged in painting an iron smokestack of a mill. For the purpose of suspending himself high above the earth; while performing the task, the employer furnished him with a defective rope to be made fast to the top of the smokestack.  Because of the defect in the rope, it separated and plaintiff was injured through being precipitated to the roof of the engine house below. The rope separated from a latent defect in the inside strands, which the evidence conduced to show might have been detected by the exercise of ordinary care to that end on the part of the master.  It appeared, too, as said in the opinion, "the weakness of the rope was not

obvious and discernible in a casual inspection such as a servant might be called upon to make before he used it." It is obvious the case presented no such question as that now under consideration. Although the rope was a simple appliance, the use for which it was furnished and employed, instead of being simple in the sense of the law, was complicated and fraught with great danger. Besides the plaintiff was not aware of the defect and it is certain that no risk is assumed unless the injured person knows of the defect. The entire doctrine rests upon the maxim *volenti non fit injuria* and involves the. idea of both knowledge and assent. [Lee v. St. Louis, M. & E. R. Co., 112 Mo. App. 372, 87 S. W. 12.] Other cases relied upon by the plaintiff may be distinguished for like or other valid reasons. We have examined them all. Those who are interested may read for themselves. They are as follows: Huth v. Dohle, 76 Mo. App. 671; Warner v. C. R. I. & P. Ry. Co., 62 Mo. App. 184; Beard v. American Car Co., 72 Mo. App. 583. The case of Robbins v. Mining Co., 105 Mo. App. 78, 79 S. W. 480, relied upon by plaintiff, involved the use of an ordinary hammer. Plaintiff was injured while breaking stone therewith at the mine. It appears, too, that he knew of the defect in the hammer. The court held he was entitled to recover. The simple appliance doctrine was not urged upon the court as a ground of non-liability. However that may be, the doctrine was not pertinent on the facts of that case, for although the appliance was simple and the work being performed therewith was simple as well, and the plaintiff knew of the defect in the hammer, it appears, too, that he had complained to the superintendent because of the defective tool and had been promised a new one. Under such circumstances, the plaintiff would not be precluded from a recovery under our law until at least a reasonable time had expired. Until then, the plaintiff was justified in continuing at the work with a defective hammer and would not be adjudged to have assumed the risk while thus awaiting a reasonable time

for the superintendent to fulfill his promise. [Conroy v. Vulcan Iron Works, 62 Mo. 35; Holloran v. Union Iron & Foundry Co., 133 Mo. 470, 480, 481, 35 S. W. 260; Stephens v. H. & St. J. R. Co., 96 Mo. 207, 9 S. W. 589.] The same may be said of the case of Duerst v. St. Louis Stamping Co., 163 Mo. 607, 63 S. W. 827. In that case the plaintiff was engaged in using a simple steel hammer in pounding and bending wires used in connection with the manufacture of granite and tin ware articles. In doing the work, the wire was laid upon a steel mandrel whereon plaintiff would deliver strokes with the hammer. A sliver of steel separated from the hammer and injured the plaintiff's eye. The case seems to be one where both the appliance employed and the work being performed were reasonably simple, although some danger essentially inhered. No question of assumed risk was presented because of a simple appliance being employed in simple work. It appears the plaintiff knew of the defect in the hammer and had complained thereof to his foreman, who examined the hammer and assured him that it was sufficient for the purpose. On the following day, the plaintiff was injured because of the defect mentioned. It appears, too, the plaintiff was an inexperienced man and his employer and the foreman were experienced. These facts appearing, together with the fact that plaintiff had complained and been assured by his employer that the hammer was sufficient for the purpose, removed the case from the influence of the rule hereinbefore referred to with respect to assumed risks, for, as the court said in the opinion, "he had a right to believe that the foreman's superior knowledge of such tools gave him to know after examining it that although the hammer had chipped, yet it would not continue to do so or that no danger from its use was to be apprehended." [Duerst v. St. Louis Stamping Co., 163 Mo. 607, 63 S. W. 827; See also Sullivan v. H. & St. J. R. Co., 107 Mo. 66, 17 S. W. 748; Stephens v. H. & St. J. R. Co., 96 Mo. 207, 9 S. W. 589.]

There has been more or less said in this State touching the matter of simple appliances furnished by the master for a simple use and some of the authorities seem to rest the doctrine of non-liability in such circumstances on one ground and some on another. In this state of the law, we have felt justified in treating the question at considerable length, to the end of contributing our mite toward elucidating and developing the principle, as we understand it, that it may be administered in a practical manner on such groups of facts as invoke its appropriate application.

It is thought proper, too, to point out that notwithstanding a line of adjudication which is generally believed to have curtailed our law on assumed risk to the extent of casting upon the servant such risks only as are ordinarily incident to the employment, there still remains a parcel of the old doctrine which is frequently, and we believe properly, applied, when the appliance and the labor are simple and the defect is known to the servant. In such circumstances, if the injury complained of results from the mode or manner in which the servant used the appliance, and might have been obviated by using it to the same end in another practical manner, the risk is still treated as one assumed, for, of two modes, one reasonably safe and one unsafe, the servant appears to have voluntarily selected the one appearing unsafe and thereby invoked the application of the doctrine portrayed in the maxim *volenti non fit injuria*.

The judgment should be reversed. It is so ordered. *Reynolds, P. J.,* concurs. *Goode, J.,* dissents. Judge *Goode* deems the judgment of the court to be in conflict with the rule announced by the Supreme Court in Dakan v. Chase & Son Mercantile Co., 197 Mo. 238, 94 S. W. 944, and requests that the cause be certified to that court for final determination in accordance with the constitutional provision to that effect, wherefore, it is so ordered.

## DISSENTING OPINION.

GOODE, J.—I do not feel free to concur in the opinion of the court in this case. From the principles and general reasoning of the opinion, considered as abstract statements of the law, I might not dissent if the question was an open one in Missouri. However, in view of the inexperience of plaintiff in the work he was doing when hurt and his entire ignorance, according to his testimony, of what would be a good and safe clawbar, I doubt if the propositions could be justly applied to him in any event. But it seems to be settled in this State; that an employee does not assume the risk of defective tools negligently furnished for his use by an employer. This has been decided in many recent cases. There might be some question about whether, even if the clawbar was defective, it was the kind of an instrument from which the defendant, in the exercise of ordinary prudence, should have anticipated mischief if an employee attempted to use it. But it seems the whole thing occurred under the eye of the foreman and I am not sure such danger from its use would not have been anticipated by an employer of ordinary prudence that plaintiff should be nonsuited on that ground as a matter of law. I deem the opinion in conflict with various decisions of the Supreme Court, including Dakan v. Chase Merc. Co., 197 Mo. 238, 94 S. W. 944, and the cases cited in the opinion in that case on page 267, and still other opinions which are not cited. Wherefore I respectfully dissent from the conclusion of the majority and ask that the case be certified to the Supreme Court for final determination.